## THE SPARE TIME II.

### In re HUTCHINSON.
### No. A-15505.

District Court, E. D. New York.
Feb. 4, 1941.

See, also, D.C., 28 F.Supp. 519.

Foley & Martin, of New York City (Christopher E. Heckman, of New York City, of counsel), for petitioner.

Purdy & Lamb, of New York City (Edmund F. Lamb, of New York City, of counsel), for claimants Robinson and Luke.

BYERS, District Judge.

The owner of the motor yacht Spare Time II filed a petition for limitation, etc., on September 30, 1938, and the cause came to trial on December 11, 1940, a delay which is not explained by anything that occurred on the trial.

On June 7, 1937, some time during the afternoon, while lying at the Tuthill dock, Greenport, Long Island, an explosion occurred on this vessel, due to the ignition of gasoline fumes in the engine space, and two or more persons were injured, and it is in respect of their damage claims that limitation is sought.

It is possible to discern from the testimony that this was a cruiser type motor boat, having a length of about 50 feet, and that the engine space was forward of the cabin and galley. No attempt was made to prove the dimensions of any of these quarters; nor the precise arrangement of the equipment, the horse power of the running motor, or other matters of that kind.

The bilge pump was in the engine space about 6 inches above the flooring, and immediately adjacent thereto was an electric motor, which operated the pump; sparks from that motor ignited the fumes emanating from the bilge at or near the pump, and the evidence establishes that the bilge water contained gasoline which had leaked from a fracture in the starboard feed pipe 1 or 1½ inches below its connection with the starboard tank, which was somewhere in the stern of the vessel.

There were two such tanks, on the starboard and port sides of the space indicated, and a tubular line was connected with each, and at some undisclosed place, about 6 or 7 feet forward of the tanks and presumably below the floor of the cockpit, those supply lines united to form one gasoline feed line leading to the carbureter and the vessel's motor equipment in the engine space forward.

The boat was privately owned and operated by the petitioner. He is therefore the sole person chargeable with knowledge of the condition of the vessel and her equipment; he had entertained a party of friends on a fishing trip to Montauk, and to Gardiners Bay, respectively, on the 4th, 5th and 6th days of June, 1937; the latter was a Sunday and, in the late afternoon, these successive trips were terminated and the vessel was moored at the Tuthill dock as has been stated.

On the 4th, the vessel had grounded on a shifting sand-bar at low water, and had been released in the rising tide which ensued, by the friendly help of another vessel. That grounding is not shown to have been accompanied by any such jar or impact as would have been likely to cause a fracture in the feed pipe to which reference has been made, and it is not thought that it did so, since, according to the testimony of the petitioner and one of his guests, the cruising on the 5th and 6th did not reveal any noticeable odors of gasoline, such as would have been expected from a leaky supply line.

The bilge pump had given the petitioner trouble and he was tinkering with it in an effort to effect repairs, probably on the 5th and certainly on the 6th. He testified that there was a leakage from the ice-box into the bilge, of which he was aware, and this caused him to make repeated efforts to induce the bilge pump to function, and no reason has been shown for discrediting this testimony.

At the time of the accident, the vessel was about nine years old, and it seems to have been of customary design and construction as of the date that it was built; the expert who was called on the part of the claimants criticised only the proximity of the Delco motor to the pump, and a lack of an intervening device to prevent arcing between the motor and the pump; also the location of the Protaine gas tanks, which were somewhere below deck in an undisclosed place.

When the vessel was moored at the dock in the late afternoon or early evening of the 6th, the owner instructed Lewis, a handyman who usually accompanied him

on his cruises and acted as cook, and who lived in Greenport, to have repairs made to the pump by a Mr. Hulse whose shop was at the end of the Tuthill pier. Then the owner left for his home in Oyster Bay.

On the following day, Lewis made known the requirements to Hulse but, because the latter was busy, word got to Robinson, one of the claimants, of the necessity for the repairs, and during the afternoon of the 7th, accompanied by his helper, Luke, he came aboard the vessel with the acquiescence of Lewis, to do the work.

Lewis, realizing that the repairs were needed, thought that perhaps it made no difference to the owner whether Robinson or Hulse should be employed; he explained the requirements, and took Robinson and Luke to the engine-room space.

The Delco motor was started and the pump did not respond; thereupon it was shut down, and Robinson proceeded to disassemble and treat certain parts of the pump; when he believed that he had effected repairs, he again started the Delco motor to operate the pump, and sparks therefrom ignited the vapor as has been stated, with the result that there was an explosion and both Robinson and Luke suffered injuries from their burns.

Since the petitioner was the sole owner and operator of the vessel, the only question for determination is whether he is chargeable with privity to and knowledge of the fracture in the feed pipe which has been described.

Obviously, if he had detected the presence of gasoline in the bilge water, it would have been his duty to ascertain the cause, but it is difficult to believe that he did make that discovery at any time while the vessel was under way, and certainly he did not inspect either of the gas lines. It is thought that he would have done so, if the fracture had existed during any of the three days involved in the fishing trips, or if he had become aware of an extraordinary depletion in the fuel supply to the running motor; he testified that a leak would have manifested itself under running conditions in a matter of twenty or thirty minutes.

That cannot be relied on entirely, because it was probably meant to refer to such a break in the pipe as would have diverted much of the contents of one of the tanks from the feed line, which was not what happened.

The testimony on that subject is clear, namely: "In the after starboard side at the tank the pipe had become either disconnected or broken a little bit and there was gas leaking out. * * * Just a fracture."—which caused a gradual leak, no pouring out of liquid gasoline.

Further: "It could be from corrosion; it could be from vibration; the vibration of the boat would cause things to break, or some unusual jar. You see it, I was going to say, practically every day."

The evidence as a whole is thought to demonstrate the following:

(a) Motor boat Spare Time II suffered a fire and accompanying explosion during the late afternoon of June 6, 1937, while moored at the dock of David Tuthill at Greenport, Long Island, in connection with which one or more persons—being the claimants in this proceeding—sustained personal injuries.

(b) The explosion was caused by the ignition of gasoline fumes at or near the bilge pump in the engine space of the said motor boat by sparks produced by the electric motor which had been started for the purpose of operating the said bilge pump.

(c) The said fumes were due to the presence, in the fluids collected in the bilges, of liquid gasoline which had leaked from a slow leak or fracture in the starboard gasoline supply line at a point not to exceed 1½ inches from the starboard gasoline supply tank located in the after end of the vessel.

(d) The evidence does not disclose when the fracture occurred or how long the slow leak had been present.

(e) The presence of the fracture and the consequent slow leak were unknown to the petitioner, and did not occur through any fault, neglect or want of care upon his part, but as the result of causes which arose without his privity, knowledge or design.

It results therefore that the petitioner has demonstrated his right to limit his liability for damages suffered by the claimants in this cause, in accordance with the law and statutes in such cases made and provided.

Settle decree.