## THE TRILLORA II.
### Petition of GUGGENHEIM.
### No. 1024.

District Court, E. D. South Carolina.
Dec. 15, 1947.

---

**51**

N. B. Barnwell, of Charleston, S. C., and Bingham, Englar, Jones & Houston, of New York City, for petitioner.

Wright & Burroughs, of Conway, S. C., and Augustine T. Smythe and Ben Scott Whaley, U. S. Atty., both of Charleston, S. C., for claimants.

WARING, District Judge.

The Yacht "Trillora II", a private pleasure craft, duly certificated and licensed, and powered and operated by gasoline motors, owned by Solomon R. Guggenheim, and whose home port was New York City, and more fully described in the findings of fact hereinafter referred to, was, in April 1942, taken out of commission and laid up for the duration of the war or for such other period as might be determined. Clarence Rothschild, an experienced business man who was employed by Guggenheim in the latter's New York office, was entrusted with the management and supervision of many of Guggenheim's personal matters, including those pertaining to the Yacht, The Yacht was sent to Bucksport, Horry County, South Carolina, and lay alongside of the wharf of the claimants Jessamine B. Richardson and D. V. Richardson, Jr.

Prior to June 25, 1946, acting on directions from the owner, the master of the vessel, Captain Gott, took steps to have the boat recommissioned, and had considerable overhauling and adjustment done throughout. Captain Gott was an experienced mariner, holding an unlimited master's license for steam and motor vessels. On June 25, 1946, in contemplation of moving the vessel, he directed that gasoline be taken aboard and the tanks filled. The starboard tank was filled when it was discovered that gasoline was escaping from the tank into the bilge. In addition to the main engines, the vessel was equipped with an auxiliary gasoline engine which was started by cranking, and the bilge pumps could be operated by it as well as by the main engines. Captain Gott cranked this auxiliary engine and immediately thereafter there was an explosion, the vessel caught fire, the fire was communicated to shore installations belonging to the claimants, the Richardsons, and also to certain property of the United States used by the Coast Guard, and these were damaged or destroyed. Captain Gott and an employee, Essie Mae Phillips, received injuries from which they died, and Sammie Phillips, another employee, received serious burns. The Yacht was sunk and is a total loss, and it is stipulated in this cause that there is no salvage therefrom.

Solomon R. Guggenheim, the owner, has by appropriate proceedings filed his petition for limitation of liability in accordance with Title 46 U.S.C.A. §§ 183–189. The Richardsons have filed their claim alleging considerable damage to their property by reason of the explosion and resulting fire, and the United States has filed a claim for the destruction and damage to certain Coast Guard property. No claims have been filed on behalf of those killed or injured. It is conceded that the Yacht was a total loss and that the sole question at present is whether the petition for limitation of liability should be granted. If that be done, the case is ended. If, however, it is held that the owner is individually liable, then the cause must proceed further to proof of the amount of damage and loss by claimants.

Chapter 8 of Title 46 of the United States Code provides for "Limitation of Vessel Owner's Liability." Title 46 U.S.C. A. § 183, subdivision (a) is as follows: "The liability of the owner of any vessel, whether American or foreign, for any embezzlement, loss, or destruction by any person of any property, goods, or merchandise shipped or put on board of such vessel, or for any loss, damage, or injury by collision, or for any act, matter, or thing, loss, damage, or forfeiture, done, occasioned, or incurred, without the privity or knowledge of such owner or owners, shall not, except in the cases provided for in subsection (b) of this section, exceed the amount or value of the interest of such owner in such vessel, and her freight then pending."

The exception noted in the foregoing is not material to this cause since it applies only to seagoing vessels, and in subsection (f) it is provided that this term does not include pleasure yachts.

Under the same Title, Section 185 provides the method by which an owner may claim limitation of liability and is as follows: "The vessel owner, within six months after a claimant shall have given to or filed with such owner written notice of claim, may petition a district court of the United States of competent jurisdiction for limitation of liability within the provisions of this chapter and the owner (a) shall deposit with the court, for the benefit of claimants, a sum equal to the amount or value of the interest of such owner in the vessel and freight * * *, or (b) at his option shall transfer, for the benefit of claimants, to a trustee to be appointed by the court his interest in the vessel and freight, * * *. Upon compliance with the requirements of this section all claims and proceedings against the owner with respect to the matter in question shall cease."

██ Limitation of liability is allowed if the loss or damage was occasioned "without the privity or knowledge of such owner." And as was said in Coryell v. Phipps, 317 U.S. 406, at page 411, 63 S.Ct. 291, at page 293, 87 L.Ed 363:

"In the case of individual owners it has been commonly held or declared that privity as used in the statute means some personal participation of the owner in the fault or negligence which caused or contributed to the loss or injury. * * *

"Some cases, however, have barred the individual owner from the benefits of the statute even though the element of personal participation in the fault or negligence was not present. Thus it has been thought that the scope of authority delegated by an individual owner to a subordinate may be so broad as to justify imputing privity (In re New York Dock Co., supra [2 Cir.], 61 F.2d [777] page 779) as well as knowledge. In re Great Lakes Transit Corp., supra [6 Cir.,] 81 F.2d [441] page 444. We need not reach those questions in this case. Privity like knowledge turns on the facts of particular cases."

The cases from the lower courts, cited by the Supreme Court, namely, In re Great Lakes Transit Corp., 6 Cir., 81 F.2d 441, and In re New York Dock Co., 2 Cir., 61 F.2d 777, point out instances where an owner may have so delegated authority as to be held in privity where the employee or agent has knowledge of the defect. And in a case decided by the Circuit Court of Appeals for the Fourth Circuit, namely, The Severance, 152 F.2d 916, it was held that where an owner was in ill health and turned over the active management of his business to his son, that the knowledge of the son could be imputed to the father, the owner. I am of the opinion that not only the authority of these cases but common sense would require that where an owner expressly delegates full authority to act for and in his behalf to an agent, he is bound by the acts of the agent and will be held in privity by the knowledge of the agent. It is clear to me that Mr. Guggenheim, the owner, gave full authority to Mr. Rothschild to manage and do whatever was right or proper or necessary in connection with the upkeep, maintenance, and operation of the Yacht, and that if Rothschild had privity or knowledge of defects, such knowledge would be imputed to Guggenheim.

It also seems entirely clear that Guggenheim did not have any actual personal knowledge of the alleged defects in the

Yacht and it is therefore necessary to inquire as to what, if any, such knowledge Rothschild had. The testimony shows that when the Yacht was put out of commission and laid up because of the coming of World War II, Captain Gott was directed to take the vessel to Bucksport, South Carolina, put it out of commission and do such things as were necessary or proper to keep the boat in good shape and sound condition, not for active operation but for safekeeping and preservation. Gott had been selected as the master of this vessel. He had been in the employ of Guggenheim for a great many years. As will be noted by the findings of fact and the testimony supporting the same, Gott had passed through various grades of seafaring employment, having been licensed as a third, second and first mate, and finally as a master. Under Gott's license he was entitled to and declared qualified to take charge of and direct the operation of a great seagoing vessel operated by steam or motor. A yacht owner does not have to employ a licensed seagoing master to take charge of a pleasure craft of this kind, and it would seem that Guggenheim went to unusual extremes in employing a man of that background and apparent capacity to take charge of a small pleasure craft. Any reasonable man would seem to be warranted in employing as the captain of a pleasure yacht a man to whom the United States Government had given an unlimited license in the operation of marine craft. Moreover, there is testimony that Gott had handled this very vessel satisfactorily and competently for a number of years. What reason could there be for either Guggenheim or Rothschild to think or imagine that Gott would be negligent in the care of the vessel or her engines, particularly in connection with starting up an engine where gasoline fumes had arisen and where the master would endanger not only his owner's property and the property of others but his own life. If the explosion and fire and the resulting damage were caused by the negligence of Gott (and while I do not so definitely hold but there is strong evidence pointing to this), I can see no reason how knowledge of such negligence could be imputed to the owner.

Of course before the limitation statutes were enacted a ship owner would be responsible for any defect or any negligence, and if such were still the law, Guggenheim would perhaps be responsible for all the damages that resulted from the occurrence on June 25, 1946. But the whole history of the limitation laws shows that it was to protect an owner and encourage shipping that limitation statutes were enacted. Were it not for these statutes, an owner would be at the complete mercy of the master of a vessel for any acts of omission or commission by him though he might be many months away from his home port and halfway around the globe. The result of such liability would be to discourage, perhaps forbid, the investment by persons in seagoing vessels, and the responsibility of the owner is now to provide a sound seaworthy vessel, properly equipped, and put it in charge of capable command. That was done in this case. Looking back on the explosion and surmising as to its cause, we might now criticize Captain Gott for not having more thoroughly examined the gasoline tanks by using air or other tests and more careful inspection. We might criticize him for starting the auxiliary engine for the purpose of attempting to pump gasoline out of the bilge rather than using a hand pump or some other safer method. But certainly the owner in New York did not have knowledge and could not have knowledge of Gott's acts of commission or omission; and it seems that this is a case that expressly fits into the rationale of the limitation statutes. The petitioner in this case complied with statutory provisions for limitation of liability (Title 46 U.S.C.A. §§ 183–189) and has in my opinion done and performed all acts necessary to claim his rights under the laws of the United States. Of course as a result of accident or the negligence of Captain Gott, and perhaps a combination of both, a chain of injuries and damages has resulted. Two lives were lost; other parties had personal injuries; and the Richardsons, as well as the United States Government, have suffered considerable property damage. The Yacht itself was totally destroy .l. So every one concerned

has suffered loss, and under the laws passed by the Congress of the United States, I am constrained to determine that none of these parties is or can be held responsible to the other. Complete findings of fact and conclusions of law are filed herewith, and also an appropriate order carrying this decision into effect.