In the Matter of the Petition of the **COLONIAL TRUST COMPANY** and **Elizabeth Deborah Steele Elton,** as owners of the pleasure yacht, "**Charlotte**" her engines, etc. in a cause of exoneration from or limitation of liability.

No. 4530.

United States District Court
D. Connecticut, Admiralty Division.

Sept. 17, 1954.

---

7. United States v. Hagaman, supra, Goodrich dissent.

Walter F. Torrance, Jr., Carmody & Torrance, Waterbury, Conn., for petitioner.

John J. Kinney, Jr., New Haven, Conn., and Frederick R. Houde, Branford, Conn., for claimant.

ANDERSON, District Judge.

The parties, by stipulation, have presented to the court a statement of facts and three questions to be answered in relation to them. These questions are: (1) does admiralty jurisdiction apply; (2) is the Colonial Trust Company, as trustee, an owner within the meaning of the provisions of the limitation of liability statute 46 U.S.C.A. § 183(a); and (3) is the petitioner Mrs. Elizabeth Deborah Steele Elton an "owner" within the provisions of the same statute.

At the time of his death on March 8, 1948, John P. Elton, of Waterbury, Connecticut, owned a gasoline-screw, cabin-cruiser, the "Charlotte," which was twenty-five feet nine inches in length. The "Charlotte" formed a part of the said John P. Elton's residuary estate, which under the terms of his will, was left to the Colonial Trust Company, of Waterbury, Connecticut, in trust, for the use of his wife, Elizabeth Deborah Steele Elton, the petitioner, during her life with the remainder to other persons. From the date of Mr. Elton's death to the date of this action, the "Charlotte" was held in the name of the Colonial Trust Company as trustee. Mrs. Elton had the sole possession, custody and control of the boat which was used by her for pleasure. The boat was operated and maintained for her by her employee, one Ezekiel Acebo.

The remaining facts set forth in the stipulation are as follows:

"On November 15, 1952, the 'Charlotte' was placed in storage for the winter in a boat house in Stony Creek, Branford, Connecticut. This boat house was privately owned and operated and charged boat owners a fee for winter storage therein. On November 17, 1952, the Claimant, Elmer E. Reff of the Town of Branford, entered into said boat house and upon the 'Charlotte' for the purpose of winterizing her engine. While the Claimant was within the 'Charlotte', an explosion and fire occurred causing extensive damage to the boat and personal injuries to the Claimant. The Claimant alleges that negligence on the part of Captain Acebo in the preparation of the 'Charlotte' for storage was the proximate cause of his injuries.

"The 'Charlotte' was owned and used solely as a pleasure yacht and at no time was ever used for hire. The operation of this boat when in the waters was normally restricted to the waters of Long Island Sound in the immediate vicinity of Stony Creek."

On November 13, 1953, a civil negligence action was brought by Elmer E. Reff against the petitioners in the Superior Court of the State of Connecticut in which Reff sought $25,000 damages for his personal injuries. In the present proceeding the petitioners seek to have that action enjoined upon the taking of jurisdiction by the admiralty court and to have liability limited under the statute, 46 U.S.C.A. § 183(a).

The three questions propounded in the stipulation are all answered in the affirmative.

In connection with the first question, the claimant urges that admiralty jurisdiction should not apply in a case such as this where the vessel is com-

pletely upon dry land and in storage in a boat house. While there might be some merit in that argument if this were an ordinary claim in admiralty, it cannot prevail where the purpose of taking jurisdiction in admiralty is the application of the limitation of liability statute.

"Proceedings by vessel owners to limit their liability as permitted by the Acts of Congress relating thereto are within the general maritime law and admiralty jurisdiction, and form an independent head of jurisdiction without regard to whether the claims limited against are such as might be sued upon in admiralty or not." Benedict on Admiralty, 6th Edition, Volume 1, page 332.

A very similar case was ruled upon in The Trim Too, D.C., 39 F.Supp. 271 in which the above quoted paragraph from Benedict was cited together with the leading cases which have enunciated and reiterated the policy that the statute should be liberally construed to encourage the building, maintenance and operation of sea-going vessels, and that it applies to non-maritime as well as maritime torts. The Main v. Williams, 152 U.S. 122, 14 S.Ct. 486, 38 L.Ed. 381; Richardson v. Harmon, 222 U.S. 96, 32 S.Ct. 27, 56 L.Ed. 110; Just v. Chambers, 312 U.S. 383, 668, 61 S.Ct. 687, 85 L.Ed. 903. See also Evansville & Bowling Green Packet Co. v. Chero Cola Bottling Co., 271 U.S. 19, 46 S.Ct. 379, 70 L.Ed. 805.

In Coryell v. Phipps, 317 U.S. 406, at page 411, 63 S.Ct. 291, at page 293, 87 L.Ed. 363 the Supreme Court referred to "the well settled policy to administer the statute not 'with a tight and grudging hand' (Mr. Justice Bradley in Providence & New York S. S. Co. v. Hill Mfg. Co., 109 U.S. 578, 589, 3 S.Ct. 379, 386, 617, 27 L.Ed. 1038) but 'broadly and liberally' so as 'to achieve its purpose to encourage investments in shipbuilding and to afford an opportunity for the determination of claims against the vessel and its owner.'" That this was a small pleasure craft does not preclude the operation of the statute. The Francesca, D.C., 19 F.Supp. 829.

Congress has made no exception of pleasure craft either afloat or hauled out on ways or in storage. It is well nigh the universal practice in the northern half of the Atlantic sea-board to place craft of sixty feet or less on land on poppets or in cradles and covered for winter storage. For the purpose of the limitation of liability statute it should not be held that they lose their maritime character as sea-going vessels because they are temporarily stored ashore as a regular part of their maintenance. There is reason behind a policy of encouraging the building of pleasure craft as well as larger commercial vessels. It gives additional work to shipyards whose men are thus enabled to preserve their skills; it gives experience to those who operate the vessel on the seas and in navigable waters and, as occurred in the early part of World War II, it provides a source of small craft available for patrol and picket duty in guarding harbors and important water-front facilities in time of war or other emergency. There is no doubt, however, that the statute may in some instances produce a situation of serious hardship to a casual artisan or other workman, not a member of the vessel's crew, who in reliance on the general credit of the owner may accept temporary employment and suffer injury through the negligence of the owner's agent where the owner is not chargeable with privity or knowledge. Benedict, 6th Edition Volume 3 in Section 474 on page 312, says,

"In the past decade the scope of the statute has been considerably narrowed both by court decisions and by new legislation. The pendulum of public policy may be observed to swing between the desirability of protecting those who invest in shipping from inordinate loss on the one hand, and the necessity of affording a remedy to cargo interests, passengers and seamen on the other." 3 Benedict page 312 Section 474.

■ If the scope of the limitation of liability statute is to be trimmed down, as it has been under certain circumstances for passengers and crews, 46 U.S.C.A. § 189 and § 491, to aid a casual workman, like the claimant in the present case, the change should be made by legislative rather than by judicial means.

■ With regard to the questions whether or not Mrs. Elton who as beneficiary under a trust, had a life use of the "Charlotte" and the Colonial Trust Company as trustee, having legal title were "owners" within the meaning of that word in the limitation of liability statute, the word "owner" must be construed in its ordinary, popular sense to fulfill the intent and purpose of the statute. The Trust Company held legal title, as trustee, and the vessel was numbered in its name, as trustee. Mrs. Elton's interest was equitable. Both of them were "owners". The claimant urges that as Mrs. Elton had only an equitable interest she cannot qualify as an "owner"; but she had in addition all of the outward attributes of ownership. She had full and exclusive possession and control of the vessel; she was responsible for its maintenance and operation. As far as third persons were concerned, she had complete dominion over it; it was her boat, and the claimant sued both her and the Trust Company in the State court as owners. The legal relations between Mrs. Elton and the "Charlotte" implicit in her life use, were of sufficient number, scope and dignity to come within the purview of the statute. Fractional interests have been held to be within the statute and so have the interests of shareholders of a corporation which owned a boat where there was individual liability of shareholders for the debts and liabilities of the corporation. Flink v. Paladini, 279 U.S. 59, 49 S.Ct. 255, 73 L.Ed. 613.

If the legal relations which together comprise ownership of a vessel can be split perpendicularly so that several persons are owners, as with tenants in common, and each is able to claim the protection of the statute, there seems little reason why the statute should not also apply where those same legal relations are split horizontally as in the present case *provided* each holder of an interest has sufficient legal relations to constitute what has been traditionally recognized in the law as "title" either legal or equitable with substantial rights and powers in dealing with the property; that is, something more than possession and control, for a mere bailee or lessee is not entitled to a limitation of his liability, The Severance, 4 Cir., 152 F.2d 916; Stone v. Diamond S. S. Transp. Corp., 328 U.S. 853, 66 S.Ct. 1344, 90 L.Ed. 1626; and something more than bare legal title held for security of an obligation not in default, because such a holder cannot invoke the statute. American Car & Foundry Co. v. Brassert, 7 Cir., 61 F.2d 162.

In The Milwaukee, 48 F.2d 842, on page 842, the district court said,

"Whatever discussion may be indulged as to what is included and what may be excluded in defining the term 'owner' as used in the limitation act and rules, the statute, by including 'charterer,' and the adjudications in cases arising under the law, disclose liberality toward scope and applicability. The judicial history of the act demonstrates that the question of ownership has been tested out, not by rigid inquiry respecting the muniments of title showing ownership to be absolute and unreserved, nor upon the mere form of transactions involving an interest in a vessel. Rather is the inquiry directed to the relationship of one asserting himself, or charged to be, the owner with a view of ascertaining whether the relationship, whatever it is found to be, might reasonably furnish ground upon which a claim of liability for damage could be asserted."

Citing Flink v. Paladini, supra, the court went on to say,

"That case seems to indicate that whether or not one is to be deemed

an 'owner' depends largely upon the possibility that he may be subjected to a liability which ordinarily is assertable against one having, or claiming to have, proprietorship or dominion over the subject of the proceeding. It negatives the thought that 'owner' of, or to 'own' a vessel means the situs of full title, interest, or dominion, and that nothing else is within the definition of the right or the range of the statute."

An order may enter staying and restraining the further prosecution of the case of Elmer E. Reff v. Colonial Trust Company et al., in the Superior Court for New Haven County, State of Connecticut, and any other proceeding based upon the claim set forth in said case except the proceeding in this court on the petition in this action; and a monition may issue accordingly.