Petition of Eugene P. READING, Elizabeth, New Jersey, Owner of the Motorboat The CROW'S NEST IIA, her engines, etc., for exoneration from or limitation of liability, civil and maritime.

Civ. No. 6528.

United States District Court
N. D. New York.

Jan. 2, 1958.

---

1. 46 U.S.C.A. §§ 596, 597 and 599.

2. See The Fletero v. Arias, 4 Cir., 206 F.2d 267, certiorari denied 346 U.S. 897, 74 S.Ct. 220, 98 L.Ed. 398.

Bigham, Englar, Jones & Houston, New York City, Carter & Conboy, Albany, N. Y., for petitioner, John L. Quinlan, John B. Shields, New York City, of counsel.

Millington & Garlick, Lake George, N. Y., for claimant, George H. Beaudin, William W. Millington, Lake George, N. Y., of counsel.

Abelove & Myers, Utica, N. Y., for claimant, Daniel S. Vetromile, Milton A. Abelove, Utica, N. Y., of counsel.

FOLEY, District Judge.

This proceeding under the Federal Limitation of Liability Statutes (46 U.S. C.A. § 183 et seq.) seeks for the petitioner, Eugene P. Reading, exoneration from liability or limitation of liability under such provisions. Such right to contest or limit liability in this fashion by a vessel owner is prescribed in United States Supreme Court Rule 53 of Admiralty Practice, 28 U.S.C.A. The claimants are two in number. One, Vetromile, was a guest aboard Reading's 26-foot Chris Craft semi-cabin cruiser with four other guests and Reading aboard when it lay at a dock adjoining his wife's summer home at Lake George, N. Y. The other claimant, Beaudin, a mechanic from an established boat firm, Scott M. Henderson, Inc., of Cleverdale, Lake George, had come aboard at Reading's request because he could not start the engine, and was there only a few minutes when a violent explosion occurred. There is in the testimony the sharp clash usual in negligence cases as to events just previous to and at the time of the happening of the explosion. Vetromile and Beaudin, as the only claimants here, seek money damages for personal injuries. The factual issues presented as to liability and responsibility based upon fault or lack of due care are simple of solution and such problems

are passed upon daily in the Courts of New York.

It is not necessary to discuss the history and intent of the Limited Liability Act. Although Beaudin started his personal injury action in the Supreme Court of New York, Warren County, where he lives and where Lake George is situated, his action was enjoined on the eve of his jury trial and after slight resistance he submitted to this complex federal legislation and procedure. Vetromile has also accepted this limitation proceeding as his day in court.

██ There are recent excellent reviews of the important cases, history and purpose of the Act by the highest authority. Lake Tankers Corp. v. Henn, 354 U.S. 147, 150–153, 77 S.Ct. 1269, 1 L.Ed.2d 1246; Maryland Casualty Co. v. Cushing, 347 U.S. 409, 413–416, 74 S.Ct. 608, 98 L.Ed. 306. It is a complex subject, and as Mr. Justice Holmes told us long ago: "General propositions do not decide concrete cases." Lochner v. State of New York, 198 U.S. 45, 74, 25 S.Ct. 539, 547, 49 L.Ed. 937. However, it is difficult to apply sensibly the prime and important principle declared inherent in this Act, namely, to encourage investment in American Shipping, and reason what significance an explosion of a motorboat of a well-to-do owner upon an inland lake bears to the safeguarding of such fine objective. Mr. Justice Black, in his dissent in Maryland Casualty, supra, 347 U.S. at page 432, 74 S.Ct. at page 621, puts it rather bluntly: "But neither the Act nor its history indicates a purpose to encourage investment in insurance companies by limiting their liabilities."

██ Also, in this situation there is not much need to marshal assets in equitable fashion because the fund is $100, and I am sure the claimants would not fight too hard over that distribution. Petition of Texas Co., 2 Cir., 213 F.2d 479, 482; In re Wood's Petition, 2 Cir., 230 F.2d 197, 199, 200, N. 11, cases cited therein. The harsh fact is present that two claimants who desire a jury trial are being deprived of it. If there were only a single claim such effect would be discountenanced. (Langnes v. Green, 282 U.S. 531, 51 S.Ct. 243, 75 L.Ed. 520; In re Putnam, 2 Cir., 55 F.2d 73, 75), and if the fund were greater than the claims the claimant would not be deprived of her common law remedies in the State Courts involving trial by jury. Lake Tankers, supra, 354 U.S. at page 153, 77 S.Ct. at page 1272. These rigid qualifications are not present here, but it seems to me if this Act is to be employed as an offensive weapon, as in the instance here, with a simple accident and few claimants, judicial means of discretion should interpose or legislative changes should be made. Petition of Colonial Trust Co., 124 F.Supp. 73, 76; Vol. 3, Benedict on Admiralty, 6th Ed., page 590. It is true the size of the motorboat is unimportant under the Act and present judicial construction. (46 U.S.C.A. § 188; Petition of Colonial Trust, D.C., 124 F.Supp. 73; Petition of Hocking, D.C., 158 F.Supp. 620; Petition of Liebler, D.C., 19 F. Supp. 829). I do not read Blackler v. F. Jacobus Transportation Co., 2 Cir., 243 F.2d 733 as carte blanche authority for injunction and concursus in all these situations. If complicity in the fault is obvious, in my judgment, it should not be granted when the claimants resist. See also Deep Sea Tankers v. The Long Branch, 2 Cir., 258 F.2d 757, 772.

██ My review of the testimony and depositions, and recollection of the witnesses who appeared before me, will not allow the placing of liability and responsibility for this unfortunate accident upon owner Reading. The foundation of liability for negligence is knowledge, or what is deemed in law to be the same thing, namely, opportunity by exercise of reasonable diligence to acquire knowledge of peril which subsequently results in injury. Nisbet v. Van Tuyl, 7 Cir., 241 F.2d 874. Issues of negligence call for the exercise of common sense and sound judgment under the circumstances of particular cases. Schultz v. Pennsylvania Railroad Co., 350 U.S. 523, 76 S.Ct. 608, 100 L.Ed. 668. Failure to guard

against a remote possibility of accident, or one which could not in the exercise of ordinary care be foreseen, does not constitute negligence. Lane v. City of Buffalo, 232 App.Div. 334, 338, 250 N.Y. S. 579. If the doctrine of unseaworthiness has any effect under the pertinent facts in this case where a boat is at a dock about to be or being checked by a mechanic, such unseaworthiness, if any, does not preclude limitation unless it exists with the owner's privity or knowledge. Vol. 3, Benedict on Admiralty, 6th Ed. page 382; The Spare Time II, D.C., 36 F.Supp. 642, 644; The Pegeen, D.C., 14 F.Supp. 748, 750, 752–753.

Applying all these standards, the evidence does not disclose any definite fault in the boat or its engines known to the petitioner or that should have been known to him in the exercise of reasonable care, or any neglect of duty on his part to ascertain danger or peril when he should have. In fact, the evidence gives strong support that Reading was an extremely careful man in the inspection, maintenance and upkeep of his boat. The motorboat was only eight years old, not old in the boat world, and it was stored with a reliable boat concern over each winter and given an annual spring checkup before being placed back in the water for the summer season. The boat was serviced in the Spring of 1956 previous to the happening of the accident, which occurred on September 13, 1956. (R. 15, 17). Most striking, in my judgment, was the conduct of the petitioner after he had committed himself to take the people at the Hotel Sagamore for a ride. At the first sign of trouble with the motor after getting gas at the Henderson dock and leaving it, he went back to that dock to have the motor checked by a mechanic. This was done by Bill Henderson, a man in the boat business all his life, son of the owner and an official of the Henderson Corporation. Reading was assured by Henderson the boat was safe and all right. (Reading deposition, January 3, 1958, pages 7–9; Reading deposition, May 6, 1958, page 7). Henderson himself testified at the trial as to what he

had done in removing a filter just ahead of the carburetor (R. 25, 27). He testified that the boat was in perfect working order, seaworthy for all intents and purposes and he so assured Reading. (R. 20). He gave his opinion, obviously conjectural to some extent, as to the cause of the explosion. (R. 32, 34). However, the impact of his testimony is that Reading relied upon him as an expert mechanic and accepted his judgment that the boat was safe, and there was no indication at all to Reading that might put him on notice of the explosion which came later.

Of course, the conduct on the part of Reading just previous to the explosion again favors reasonableness and caution on his part. Again when he experienced trouble in starting after pushing the starter button three or four times he again sent to the nearby Henderson Boat Yard for a mechanic. To me this again is a good sign as to what a reasonable man should have done under all the circumstances present. This is when Beaudin appears on the scene, and there is substantial dispute then as to his conduct and Reading's just previous to the explosion. People vary often in the recollection of events previous to and during the happening of accidents, but the explanation of Reading that the mechanic asked him what was the matter and Reading told him that the motor would not kick off, a few explosions and that is all seems the more plausible under the circumstances present. It is my finding that this did occur and that Reading did not push the starter button until so directed by mechanic Beaudin after he had raised the hatch cover and was working on the engine. The deposition of Hughes, a disinterested stranger as far as Reading is concerned, gives good credence to such version. Also, the evidence does not satisfy me that just previous to Reading asking his wife to call the mechanic, and when Beaudin was present at the motor, there were noticeable gas odors present. Beaudin himself does not remember any odor of gas, (R. 107), and Vetromile was vague as to gas

odors at the critical time just previous to the explosion. (R. 164, 165). Reading was honest enough to admit he had a severe sinus condition and an odor would have to be strong, but said neither Henderson nor the mechanic, Beaudin, complained to him of any gas odors. (Reading deposition May 6, 1958, page 16). It is my finding that such odors were not present to such extent as to warn Reading of the coming danger and peril of explosion. This lack of awareness cannot be blamed upon lack of due care or diligence on the part of Reading, and the best answer to his knowledge of peril was the position Reading kept in the boat as he awaited the inspection and instructions from mechanic Beaudin. The overall picture, without any definite explanation for the explosion, indicates due care on the part of Reading and no failure to warn of a danger that he failed to anticipate because of his lack of care. The claim of Beaudin is particularly weak because of my finding against his conduct. Byars v. Moore-McCormack Line, 2 Cir., 155 F.2d 587; Bruszewski v. Isthmian S. S. Co., 3 Cir., 163 F.2d 720, certiorari denied 333 U.S. 828, 68 S.Ct. 451, 92 L.Ed. 1113. Vetromile's status as a guest is different, but there are no legal obligations to him as such that the facts here show Reading violated. Higgins v. Mason, 255 N.Y. 104, 174 N.E. 77. The doctrine of Res Ipsa Loquitur does not apply, in my judgment, because there is good showing and explanation that reasonable care to avoid fault or neglect was present on the part of Reading that rebuts any conclusion from the explosion itself that there was an omission of duty on his part.

This opinion constitutes and contains my material findings of fact. My conclusion of law is that the petitioner is entitled to a decree granting the petition for complete exoneration from liability and ordering the two claims herein dismissed. A decree shall be submitted accordingly by the Proctors for the petitioner. See Matteson v. United States, 2 Cir., 240 F.2d 517.