255 F.2d 628
 Petition of Mason G. RAPP and Watson Harbaugh, individuals, for exoneration from, or limitation of, liability as owners of a certain vessel known as THE FOO III.
Petition of Richard T. WITTWER and Arthur G. Ebeling, etc., individuals, for exoneration from, or limitation of, liability as owners of a certain vessel known as THE FANTOME.
Mason G. RAPP and Watson G. Harbaugh, Appellants,
v.
Richard T. WITTWER and Arthur G. Ebeling, and Stanley C. Kolba, Appellees.
 No. 12170.
 United States Court of Appeals Seventh Circuit.
 May 16, 1958.
 Rehearing Denied June 12, 1958.
 
 Edward B. Hayes, Wm. Bricen Miller, Jr., and Warren C. Ingersoll, Chicago, Ill., Lord, Bissell & Brook, Chicago, Ill., of counsel, for appellant.
 Louis J. Keating, Georges H. Dapples, Chicago, Ill., Kirkland, Fleming, Green, Martin & Ellis, Chicago, Ill., of counsel, for appellee.
 Joseph W. Griffin and Joseph H. Hinshaw, Chicago, Ill., Hinshaw, Culbertson, Moelmann & Hoban, Chicago, Ill., of counsel, for appellees, Richard T. Wittwer and Arthur G. Ebeling.
 Before FINNEGAN, SCHNACKENBERG and PARKINSON, Circuit Judges.
 SCHNACKENBERG, Circuit Judge.
 
 
 1
 From a decree in admiralty entered in a consolidated action, Mason G. Rapp and Watson Harbaugh, appellants, have appealed to this court.[1]
 
 
 2
 On August 17, 1952, a collision occurred between two vessels, one being Foo III (also referred to herein as "Foo"), owned by Rapp and Harbaugh, and the other, Fantome, owned by Arthur G. Ebeling and Richard T. Wittwer, appellees.[2]
 
 
 3
 The vessels were pleasure sailing yachts, and the collision occurred on the Chicago waterfront on Lake Michigan.[3]
 
 
 4
 Stanley C. Kolba had filed in a state court a suit against Rapp and Harbaugh, as well as Wittwer and Ebeling, for injuries sustained in the collision involved in this case. The district court enjoined the state court proceeding.
 
 
 5
 The owners of each vessel involved in the collision filed a claim against the other vessel and its owners. The respective owners in amended petitions asked that, if it should be found that there was negligence on the part of both vessels, or of both owners, each should be required to contribute to any damages that might be allowed to Kolba. He had filed a claim against Rapp and Harbaugh and another against Wittwer and Ebeling, and their respective vessels. Wittwer and Ebeling filed a claim against Rapp and Harbaugh, who filed a claim against Wittwer and Ebeling.[4]
 
 
 6
 Following a hearing, without a jury, the district court found for claimants Wittwer, Ebeling and Kolba and against the vessel Foo and its owners Rapp and Harbaugh, and granted the amended petition of Wittwer and Ebeling for exoneration as owners of the Fantome. Rapp and Harbaugh filed objections and exceptions to proposed findings of facts and conclusions of law submitted by the attorneys for Kolba, Wittwer, and Ebeling, all of which were overruled, and the court entered the judgment order.
 
 
 7
 There is substantial evidence in the record to establish the following statement of facts.
 
 
 8
 Each vessel was a sailing boat, a one-masted racing yacht (a sloop), about 40 feet long. The helmsmen and crew members were sportsmen, unpaid, and not subject to discipline.
 
 
 9
 The collision occurred in the early afternoon under conditions of unlimited visibility. The wind was, in general, off the shore and variable, blowing from 2 or 3 to 9 or 10 miles per hour, approximately. The waves were very light.
 
 
 10
 The Foo was sailing in a northerly direction on a port tack and running on a broad reach. The Fantome was sailing close-hauled in a southwesterly direction on a starboard tack. The Fantome was sailing faster than the Foo.
 
 
 11
 Rapp was at the tiller of the Foo. Haring was assigned as forward lookout and light canvas man. In a cockpit aft of the mast and close to the middle of the Foo, were crew members Clare and Atwood, and Rapp. Haring's station was a small forward cockpit, in the bow and forward of the mast. The sails, which were out to the right or starboard, cut off the view over a considerable arc of the horizon for the men in the main cockpit behind the mast. Haring had, pursuant to Rapp's order, raised the jib about five minutes prior to the collision. Haring sat on the deck at the port side of the forward cockpit, with his feet and legs down in the cockpit. While sitting there he could have looked around his jib without difficulty. Rapp could not see Haring when both men were at their normal stations and in their usual positions. Rapp did not specifically instruct Haring to act as lookout. It was understood that everybody on the boat, as a part of his regular duties, would do so.
 
 
 12
 The Fantome weighed more than twice as much as the Foo. Ebeling was at the tiller, crewmen Choate and Doyle being in the cockpit. Kolba was designated as forward lookout on the Fantome and his station was at the bow to cover the arc of the horizon cut off by the sails of that vessel from the view of the men in the cockpit. The men in the cockpit had their views obstructed by these sails from the quarter in which the Foo was navigating. Kolba left his station and went aft of the mainmast 5 or 10 minutes before the collision and remained away from his station during that time, then making no observation to port.
 
 
 13
 The Fantome was carrying a general but shifting southwesterly course coming off the lake toward the shore. During the five minutes prior to the impact the motion of the Fantome was causing it to swing from about 230 to 250 degrees. In describing its action, Ebeling testified, "the compass precesses and lags." He further testified: "It was in a southwesterly direction; * * * It was swinging. * * * The motion of the vessel causes it to lag and precess. * * * There was a slight luff in the jenny about two minutes prior to the accident." Ebeling fell off in the wind, because it was varying slightly. Then he was hardening up in the wind, taking the Fantome to around 240 degrees, and his sail was luffing, "trying to get an idea of where the wind was actually coming from", and varying around 230 degrees.[5]
 
 
 14
 Although Ebeling knew that Kolba had left his post, he did not order him to return, during a 5 to 10 minute period, until almost the instant of the collision at which time he did tell him. Kolba was still aft of the mast when the collision occurred. No one aboard knew collision with the Foo was imminent, although both Ebeling and Kolba knew a vessel was navigating in their blind quarter.
 
 
 15
 The Fantome passed ahead of the Foo so that the bow of the Foo came into contact with the port side of Fantome at the latter's chain plates just aft of the shrouds that support the mast.
 
 
 16
 The amount of damages sustained by the two vessels and the value of each following the collision were stipulated, as were Kolba's medical expenses.
 
 
 17
 It is argued by appellees Wittwer and Ebeling that the "Fantome was sailing in a southwesterly direction and there was a wind coming from the west and varying between two and ten miles per hour in velocity." They further argue:
 
 
 18
 "* * * In order to sail in this direction with such a wind, there necessarily had to be a hardening up of the sails followed by a luffing, followed by a hardening up, with these movements of the sails repeated. That is the only way a vessel sailing southwesterly could make progress with the wind as it was. Naturally, there was a relatively slight swing to the bow of the Fantome during such sailing. This swinging motion of the bow of the Fantome was a necessary, usual and well known movement of the bow of a sailboat under the circumstances, and certainly all sailors would be familiar with it. While this motion was occurring, the Fantome was proceeding on her southwesterly course. To describe such motion of the bow of the Fantome as a change in course, as appellant Rapp has done, it is submitted, is incorrect. It is more truly described, as Ebeling described it, as a swinging of the bow of the Fantome caused by the motion of the boat, which is a change of heading only and not a change of course. It is submitted that there was no change in course by the Fantome while on her southwesterly course prior to collision."
 
 
 19
 The district court evidently accorded validity to this argument, because it made this finding of fact:
 
 
 20
 "17. During the several minutes prior to collision Fantome maintained a steady course and speed under existing sailing conditions while proceeding in a southwesterly direction and did not change course."
 
 
 21
 On the entire record we believe that there is substantial evidence to support finding 17.
 
 
 22
 On the day in question there was in effect rule 16 of Navigation Rules for the Great Lakes[6] which reads, in part:
 
 
 23
 "When two sailing vessels are approaching one another so as to involve risk of collision one of them shall keep out of the way of the other, as follows, namely:
 
 
 24
 "(a) A vessel which is running free shall keep out of the way of a vessel which is close-hauled.
 
 
 25
 "(b) A vessel which is closehauled on the port tack shall keep out of the way of a vessel which is closehauled on the starboard tack."
 
 
 26
 Inasmuch as the Foo was running free on the port tack and the Fantome was close-hauled on the starboard tack, the Foo, as the burdened vessel, was required to keep out of the way of the Fantome, the privileged vessel.
 
 Rule 20[7] provides:
 
 27
 "Where, by any of the rules in this chapter prescribed, one of two vessels shall keep out of the way, the other shall keep her course and speed."
 
 
 28
 Accordingly, the Fantome as the privileged vessel was required to keep her course and speed.
 
 
 29
 The district court made the following finding:
 
 
 30
 "27. The absence of a lookout on Fantome immediately prior to collision is not material because the presence of one would not have availed to prevent collision."
 
 
 31
 The evidence in the record substantially supports finding 27.
 
 
 32
 Rapp testified that he could have avoided the collision when he was "within one boat length [40 feet] of the scene of collision", saying that he "could have fallen off" which would have "taken the bow to starboard." There is no evidence that he made such effort. Consequently, the Fantome was duty bound to maintain its course up to that time. Thereafter nothing could have been done by the Fantome to prevent the collision.
 
 Rapp refers to rule 27[8] which provides:
 
 33
 "In obeying and construing these rules due regard shall be had to all dangers of navigation and collision and to any special circumstances which may render a departure from the above rules necessary in order to avoid immediate danger."
 
 
 34
 Obviously, this rule means that the Fantome, when danger became immediate, would have been justified in changing her course, if she could, without incurring liability arising from a departure from rule 20, which required her to keep her course. However, as mentioned above, at that time the Fantome could not have avoided collision by changing course, because the vessels were then only 40 feet from the scene of collision. Moreover, the Fantome weighed more than twice as much as the Foo and, therefore was less maneuverable in such a limited space.
 
 
 35
 The district court found (finding 18) that neither Kolba nor Ebeling was guilty of negligence or personal fault and that (finding 19) Fantome and Ebeling were not in violation of any of the Navigation Rules for the Great Lakes, whereas (finding 20) Foo and Rapp were violating rules 16 and 288a of those rules, and that (finding 21) the fault of Foo and Rapp was the sole and proximate cause of the collision and resulting damage to Kolba and Fantome. The court further found (finding 22) that said damage was incurred with the privity and knowledge of Rapp. It specifically found (finding 25) that Rapp saw Haring while the latter was in his position of forward lookout during the few minutes immediately preceding the collision, observed the jib and its position and knew or should have known from Haring's position and the position of the jib that Haring was not keeping a lookout to starboard, from which direction vessels having the right-of-way would be approaching.
 
 
 36
 The trial court, acting as a trier of the facts without a jury, heard the evidence and made inter alia the findings of facts to which we have referred. On the evidence in this record, we cannot say that the court's findings are clearly erroneous, and, therefore, we may not disturb them. Koehler v. United States, 7 Cir., 187 F.2d 933, 936. We have no greater scope of review in admiralty cases than we exercise under rule 52(a) of the Federal Rules of Civil Procedure.[9] In this case we may not set aside the judgment below unless it is clearly erroneous. McAllister v. U. S., 348 U.S. 19, 20, 75 S.Ct. 6, 99 L.Ed. 20.[10] We cannot so characterize it.
 
 
 37
 For the reasons herein stated, the decree of the district court is affirmed.
 
 
 38
 Affirmed.
 
 
 
 Notes:
 
 
 [1]
 28 U.S.C.A. Admiralty Rule 51
 
 
 [2]
 The district court had before it their amended petition for exoneration from, or limitation of, liability, civil and maritime, and for a determination of responsibilities for claims made as between vessel owners, parties hereto and for contribution and recoupment and further relief
 
 
 [3]
 Harbaugh and Wittwer were not aboard at the time of the collision. On this appeal no question is made of the freedom from privity and knowledge of each, and of the right of each to limit his liability in the event his vessel be found at fault, and the trial court so found
 
 
 [4]
 Answers to the amended petitions of Rapp and Harbaugh were filed by Kolba, Wittwer and Ebeling; and Kolba, as well as Rapp and Harbaugh, filed answers to the amended petitions of Wittwer and Eberling
 
 
 [5]
 Rapp testified that in the normal sailing waves would change the course of a ship slightly and that as he proceeded in a northerly course prior to the collision he presumed the bow of his boat did so vary
 
 
 [6]
 33 U.S.C.A. § 281
 
 
 [7]
 33 U.S.C.A. § 285
 
 
 [8]
 33 U.S.C.A. § 292
 8a. 33 U.S.C.A. § 293 (rule 28) reads:
 "Nothing in these rules shall exonerate any vessel, or the owner or master or crew thereof, from the consequences of any neglect to carry lights or signals, or of any neglect to keep a proper lookout, or of a neglect of any precaution which may be required by the ordinary practice of seamen, or by the special circumstances of the case."
 
 
 [9]
 28 U.S.C.A. Rule 52(a)
 
 
 [10]
 To the same effect is Mississippi Valley Barge Line Co. v. Cooper Terminal Co., Inc., 7 Cir., 217 F.2d 321, 323