Petition of **H. T. PORTER** and **L. A. Bell**, as Owner and/or Chartered Owner of the **YACHT JULAINE** in a Cause of Exoneration from or Limitation of Liability.

No. 64–H–157.

United States District Court
S. D. Texas,
Houston Division.

May 4, 1967.

Appeal Denied June 13, 1967.

John P. Forney, B. D. McKinney, Houston, Tex., for petitioners.

James B. Sales, Douglas Matthews, Houston, Tex., for claimants.

## MEMORANDUM AND ORDER

SEALS, District Judge.

Claimants Katheryn Skinner Bell and Jack R. Fulton and wife, Mae Belle G. Fulton, have filed a motion to dismiss the above styled and numbered cause for want of jurisdiction. Claimants further request that in the event that the motion to dismiss is denied, this Court certify an interlocutory appeal to the Court of Appeals. The sole question presented for determination at this time is whether the Limitation of Liability Act may be properly applied to a twenty-nine foot pleasure craft such as the JULAINE. The portions of the statute relevant to this discussion are found in 46 U.S.C.A. §§ 183 [1] and 188.[2]

The petition for exoneration from or limitation of liability was occasioned by the explosion of the JULAINE on August 2, 1964. Claimants were guests on board the vessel at that time. They claim aggregate damages in the amount of $125,000 from petitioners Porter and Bell as a result of their injuries received in the explosion. If petitioners are able to limit their liability under the Act, claimants' recovery, if any, will probably be restricted to less than three thousand dollars.

The original Limitation of Liability Statute was enacted in 1851. 9 Stat. 635. The purpose of the Act was plainly to promote American commercial shipping

---

[1]. § 183 (a) The liability of the owner of any vessel, whether American or foreign, for any embezzlement, loss, or destruction by any person of any property, goods, or merchandise shipped or put on board of such vessel, or for any loss, damage, or injury by collision, or for any act, matter, or thing, loss, damage, or forfeiture, done, occasioned, or incurred, without the privity or knowledge of such owner or owners, shall not, except in the cases provided for in subsection (b) of this section, exceed the amount or value of the interest of such owner in such vessel, and her freight then pending.

(b) In the case of any seagoing vessel, if the amount of the owner's liability as limited under subsection (a) of this section is insufficient to pay all losses in full, and the portion of such amount applicable to the payment of losses in respect of loss of life or bodily injury is less than $60 per ton of such vessel's tonnage, such portion shall be increased to an amount equal to $60 per ton, to be available only for the payment of losses in respect of loss of life or bodily injury.

If such portion so increased is insufficient to pay such losses in full, they shall be paid therefrom in proportion to their respective amounts.

\*     \*     \*     \*     \*

(f) As used in subsections (b), (c), (d) and (e) of this section and in section 183b of this title, the term "seagoing vessel" shall not include pleasure yachts, tugs, towboats, towing vessels, tank vessels, fishing vessels or their tenders, self-propelled lighters, nondescript self-propelled vessels, canal boats, scows, car floats, barges, lighters, or nondescript non-self-propelled vessels, even though the same may be seagoing vessels within the meaning of such term as used in section 188 of this title. 46 U.S.C.A. § 183.

[2]. § 188 Except as otherwise specifically provided therein, the provisions of sections 182, 183, 183b–187, and 189 of this title shall apply to all seagoing vessels, and also to all vessels used on lakes or rivers or in inland navigation, including canal boats, barges, and lighters. 46 U.S. C.A. § 188.

by protecting private investment against financially staggering claims arising out of shipboard disasters. Cong.Globe, 31st Cong., 2nd Sess. 331, 332, 713–720 (1851). In one of the first cases that considered the application of the Act, the court concluded that the statute was restricted in its application to vessels of a commercial nature. The Mamie, 5 F. 813 (D.C.E.D.Mich.1885). Accordingly limitation of liability was denied to the owners of a steam pleasure yacht involved in a collision on the Detroit River. In fact, Section 7 of the 1851 Act provided that it should not apply to "any canal boat, barge, or lighter, or to any vessel of any description whatsoever, used in rivers or inland navigation".

But in 1886, Congress amended the Act to extend its application to "all sea-going vessels, and also to all vessels used on lakes or rivers or in inland navigation, including canal-boats, barges, and lighters". 24 Stat. 80 (now 46 U.S.C.A. § 188). Thereafter, judicial interpretation of the Act in relation to pleasure craft changed accordingly. By 1937, the Court of Appeals for the Sixth Circuit specifically held that the Act applied to any vessel; in this case a fifteen foot Chris-Craft motorboat used for pleasure on the Ohio River. Feige v. Hurley, 89 F.2d 575 (6th Cir. 1937).

The reasoning of the courts in this respect is best illustrated by a district court decision of the same year:

> "Since the amendment taking out the exception, it has uniformly been held by the courts that the question of the right to limitation of liability is not based upon the engagement of the vessel in maritime commerce, and further it is not based upon the question of the size of the craft." The Francesca, 19 F.Supp. 829, 832 (W.D.N.Y. 1937).

Case law since 1937 is also in accord. See, Petition of Reading, 169 F.Supp. 165 (N.D.N.Y.1958), aff'd 271 F.2d 959 (2nd Cir. 1959); Petition of Colonial Trust, 124 F.Supp. 73 (Conn.1954); The Trillora, 76 F.Supp. 50 (E.D.S.C.1947). In addition, the leading textual authorities

at least recognize this conclusion as the present status of the law. Gilmore & Black, The Law of Admiralty, § 10–12, at 674 (1957); Knauth, Benedict on Admiralty, § 494, at 403–405 (6th Ed. 1940).

On at least three occasions the Supreme Court has considered cases involving small craft owners seeking to limit their liability under the Act. The first, Spencer Kellogg & Sons, Inc. v. Hicks, 285 U.S. 502, 52 S.Ct. 450, 76 L.Ed. 903 (1932), concerned a forty-five foot motor launch used to transport workmen across the Hudson River to and from the owner's business establishment. The facts suggest that this vessel was engaged in a commercial activity and is, therefore, probably of small value to this discussion. Suffice it to say, the Court did not discuss the size of the craft or the purpose to which it was being used.

The other two cases, however, involved typical pleasure yachts. In Just v. Chambers, 113 F.2d 105 (5th Cir.) reversed 312 U.S. 383, 61 S.Ct. 687, 85 L.Ed. 903 (1941), the Court reinstated a district court judgment that the injuries sustained by the petitioners were occasioned with the knowledge or privity of the shipowner and limitation was not available. In Coryell v. Phipps, 317 U.S. 406, 63 S.Ct. 291, 87 L.Ed. 363 (1943), on the other hand, the Court allowed the owner to limit his liability upon a lower court finding that there was no privity or knowledge to the negligence which caused the injuries. As in Kellogg, there was no discussion of pleasure craft as an exception to the Act in either of these cases. Similarly, the majority of lower court opinions in which the Act has been applied to pleasure craft contain the same paucity of discussion in this matter. See, Petition of Rapp, 255 F.2d 628 (7th Cir. 1958); The Pegeen, 14 F.Supp. 748 (S.D. Calif.1936); The Spare Time II, 36 F. Supp. 642 (E.D.N.Y.1941); The Trim Too, 39 F.Supp. 271 (Mass.1941); Petition of Hocking, 158 F.Supp. 620 (N.J. 1958); Petition of Landi and Mainieri, 194 F.Supp. 353 (S.D.N.Y.1960).

The application of the Limitation Act to pleasure craft has not been without

criticism, especially in recent years. In Petition of Hutchison, where limitation was denied because of the owner's failure to exercise proper care in rescuing a passenger that had fallen overboard, the court expressed strong doubts that the words "any vessel" in § 188 should have the effect of limiting the liability of the owner of a small pleasure yacht. 1947 A.M.C. 103, 104 (N.D.Ohio 1946); see also, Kulack v. The Pearl Jack, 79 F.Supp. 802, 807 (W.D.Mich.1948). Another district court, while allowing limitation, found it difficult to reconcile the original purpose of the Act with the explosion of a motorboat of a well-to-do owner. Petition of Reading, supra, 169 F.Supp. at 167. The same court in 1960 (on this occasion denying limitation because the injury did not occur on the navigable waters of the United States) elaborated on the situation in this manner:

> "I am sure the ever-growing number of purchasers of these small pleasure craft do not check the limitation statutes before they purchase and never will. The financial protection and regulation necessary to alleviate the burden of society where the widow and orphan, maimed and crippled, are with us as a result of unfortunate highway accidents seem to me just as important in these boating accidents." Petition of Madsen, 187 F.Supp. 411, 413 (N.D. N.Y.1960).

More outspoken in their denunciation of the inequities that may arise when limitation is accorded to pleasure craft are the textual authors and other legal writers. This criticism is best summed up by the commentary of Gilmore & Black, § 10–23, at 700:

> "Most of the recent individual ownership cases involve pleasure yachts and owners who are amateur yachtsmen. The Limitation Act, originally passed to afford a measure of relief to a hard pressed and highly competitive industry, has become a charter of irresponsibility for a few wealthy individuals. The individual owner of, say, a small fishing vessel which explodes in port may well find himself liable to respond in damages under circumstances where the absentee yacht-owner will go free. No theory can justify the results reached in Coryell v. Phipps or The Trillora, under which the owner of the yacht or speedboat, who is provident enough to hire someone else to run the boat for him, is granted a general license to kill and destroy."

Recent law review articles have echoed this sentiment. These articles have pointed out that as small boat sales and traffic increase, so will the number of accidents and potential situations in which claimants may find themselves with pitifully inadequate recompense for serious injuries or death. It is urged that the result of this situation is to allow liability insurance companies to become the true beneficiaries by limiting their liability to the value of the vessel. See generally, Harolds, Limitation of Liability and Its Application to Pleasure Boats, 37 Temp.L.Q. 423 (1964); Stolz, Pleasure Boating and Admiralty: Erie at Sea, 51 Calif.L.Rev. 661 (1963); Comment, Limitation of Liability in Admiralty: An Anachronism from the Days of Privity, 19 Vill.L.Rev. 721 (1965).

Appealing as these arguments may be, this Court does not consider itself justified in deviating from the settled case law in this matter. It is significant that no reported case in recent times has denied limitation of liability for the reason that the vessel was a pleasure craft and, therefore, not within the scope of the Limitation Act. It may be assumed that the more recent decisions holding the Act applicable to pleasure craft have been unable to find fault with the conclusion that "the evident purpose of the amendment (of 1886) was to make the statute applicable to all vessels, irrespective of the purpose to which they are put". The Francesca, supra 19 F.Supp. at 832.

This conclusion is buttressed by the fact that in 1935, Congress amended the statute to provide for the "$60 per ton fund" to be used to compensate claimants for loss of life or bodily injury where the owner's liability was limited under the

Act. 49 Stat. 960 (now 46 U.S.C.A. § 183(b)–(f)). At that time yachts along with towboats, lighters, barges and other craft were specifically excluded from the operation of this portion of the Act. 46 U.S.C.A. § 183(f). Prior to that time, however, the courts had held that yachts or pleasure boats were entitled to limitation under the Act. Warnken v. Moody, 22 F.2d 960 (5th Cir. 1927); The Alola, 228 F. 1006 (D.C.Va.1915); The Mistral, 50 F.2d 957 (D.C.W.D.N.Y.1931). Likewise, lighters and towboats had also been held to be covered by the Act. See Wessel, Duval & Co. v. Charleston Lighterage & Transfer, Co., 25 F.2d 126 (D.C. E.D.S.C.1928) and the M. Moran, 120 F. 556 (D.C.E.D.N.Y.1903). This leads to the conclusion that Congress realized that these types of craft were within the scope of the general limitation provisions of § 183(a), but were not to be included for purposes of the "$60 per ton fund".

It should also be recognized that the Limitation Act is not the only instance in which Congress has shown an inclination to legislate in regards to pleasure craft. The Rules of the Road are applicable to all vessels, including pleasure craft, and, except for the International Rules, make a violation thereof a criminal offense. 33 U.S.C.A. §§ 144–147d; 33 U.S.C.A. §§ 151–232; 33 U.S.C.A. §§ 241–295; 33 U.S.C.A. §§ 302–356. The Motor Boat Act of 1940 specifies the equipment to be carried on engine powered vessels on the navigable waters of the United States. 46 U.S.C.A. §§ 526–526u.

■ It is the opinion of this Court that Congress intended the Limitation of Liability Act to apply to pleasure craft such as the JULAINE as well as those vessels used for commercial purposes. Although it may reduce claimants' recovery drastically if it is later determined that petitioners are entitled to limit their liability, the remedy lies with congressional, not judicial action.

■ After careful consideration of all issues raised by claimants in this matter, it is the opinion of this Court that the motion to certify an interlocutory appeal under 28 U.S.C.A. § 1292(b) should be granted. If the Court of Appeals is of the opinion that the JULAINE is not covered by the Limitation of Liability Act, this Court is without jurisdiction in this cause of action and proceedings herein would be ended. The sharp criticism of legal writers and some lower courts concerning applicability of the Act to pleasure craft indicates there is substantial ground for difference of opinion involving this controlling question of law. This is emphasized by the silence of the Supreme Court and the Court of Appeals for the Fifth Circuit on this issue.

For the reasons stated herein, the motion to dismiss for want of jurisdiction is denied. Further, pursuant to 28 U.S. C.A. § 1292(b), this Court certifies that this Order involves a controlling question of law as to which there is a substantial ground for difference of opinion and an immediate appeal from such Order may materially advance the ultimate termination of litigation involved in this cause. Claimants will have the time under the rule to make their appeal.

The Clerk will notify counsel and forward to them true copies hereof.