## KULACK et al. v. THE PEARL JACK et al.
### No. 10872.

United States Court of Appeals.
Sixth Circuit.
Dec. 9, 1949.

———◆———

C. A. Mitts, Grand Rapids, Mich., Leo W. Hoffman, Allegan, Mich., Mitts & Smith, Grand Rapids, Mich., Leo W. Hoffman, Allegan, Mich., on the brief, for appellants.

Fred T. Miles, Holland, Mich., Miles & Miles, Holland, Mich., on the brief, for appellee John T. Barron, Sr.

Before HICKS, Chief Judge, and SIMONS and McALLISTER, Circuit Judges.

SIMONS, Circuit Judge.

The cases of Kulack and Ciohon were begun as libels in the district court and Klaric sued in the Allegan County Circuit Court from which her case was removed to the district court because of diversity. Since all three relied upon the same allegations of negligence against the same respondents the cases were consolidated for trial by stipulation and decided by a single decree.

The appellants were passengers for hire on the vessel Pearl Jack, operating on the Kalamazoo River at Saugatuck, Michigan, on July 30, 1945, when they were injured by an explosion and fire on the boat. The libels were against the boat and all three appellants charged the individual defendants with negligence in its operation on the ground that they were partners or joint adventurers in the enterprise upon which the boat was engaged. A petition for limitation of liability by Dennison was overruled, judgment went against Dennison and John T. Barron, Jr., and the libels and complaint were dismissed against Barron, Sr. This appeal is solely from the judgment of no cause of action in favor of Barron, Sr.

██ No question arises as to the existence of a partnership between Dennison and Barron, Jr., in the operation of the Pearl Jack and other boats out of Saugatuck, nor as to the liability of the partnership for the injuries suffered by the appellants. The court, however, upon specific findings of fact, concluded that Barron, Sr., was neither a partner with his son and Dennison nor a joint adventurer with them or either of them in the enterprise. We consider the case as it was considered below and in the briefs here, as solely one in admiralty. So considered it is deemed upon appeal as a trial de novo. Brooklyn Eastern District Terminal v. U. S., 287 U. S. 170, 176, 53 S.Ct. 103, 77 L.Ed. 240, and cases therein cited. It is the rule, however, in this and other circuits, that while an appeal in admiralty is a trial de novo, the findings of the district court will be accepted unless clearly against the preponderance of evidence. The William A. Paine, 6 Cir., 39 F.2d 586; The Perseus, 6 Cir., 272 F. 633; Drowne v. Great Lakes Transit Corporation, 2 Cir., 5 F.2d 58; Shepard v. Reed, 6 Cir., 26 F.2d 19.

██ There was much detailed evidence as to the activity of all three appellees in relation to the ownership and operation of boats, their purchase and sale and the financial transactions incident thereto, both prior to and subsequent to the accident upon which the libels and complaint were based. It will serve no useful purpose to recite all of these details. It is sufficient to say that the boat activity was carried on informally and the partnership accounts were likewise so conducted. Barron, Sr., had no title to the Pearl Jack nor to any other boat of the partnership at the time of the accident, although he had more than a year previously bought a motor boat which he gave as a gift to his son. There is no evidence of mutual agency so vital to the concept of a partnership in respect to Barron, Sr., and no evidence of his participation in the profits derived from either the operation or sale of any of the partnership boats. The core of the controversy appears to hinge on whether certain sums of money from Barron constituted loans to his son or represented a contribution to the capital of the firm. The court saw and heard the witnesses. Aside from the rules of civil procedure which do not apply to admiralty trials we conceive ourselves justified in giving consideration to the superior opportunities of the district judge for ascertaining the truth. The burden of establishing Barron, Sr., either as a member of the firm or as a joint adventurer either with Dennison or with Dennison and his son, was upon the libellants. We think this burden not successfully borne and that Barron, Sr., was neither a partner nor joint adventurer with either or both of his co-appellees.

██ A second contention of the appellants was not determined by the court either in its findings or conclusions of law, and is before us at large upon the record. On July 6, 1945, Barron, Sr., obtained from the clerk of the Village of Saugatuck, two

licenses for the operation of motor boats for hire. One recites that he paid a fee of $31.75 and the other that he paid a fee of $26.50. The licenses were issued under the authority of an ordinance of the village to regulate the licensing and operation of motor boats for hire from an anchorage within the village limits, and provides for a fee for each motor boat in the amount of 50 cents per foot over-all and 25 cents per horse-power or fraction thereof, and makes it unlawful for any person to operate a motor boat from an anchorage within the village limits without first obtaining license, and provides for a fine in the event of violation. There is much discussion in the briefs, pro and con, as to whether the village had authority to promulgate the ordinance, and if so, the source of its authority under specific statutes of the State of Michigan. The argument, we think, is beside the point. The licenses are merely naked licenses specifying no boats. They cannot be identified as authority for the operation of the Pearl Jack, either singly or together. The Pearl Jack was 28 feet in length and had a 150 horse-power gasoline Marine engine. At the ordinance rate the license fee for the Pearl Jack should have been $51.50.

In this factual situation the cases cited by appellants for the principle that an individual or corporation which carries on an activity which can be lawfully carried out only under a franchise granted by public authority and which involves an unreasonable risk of harm to others is subject to liability for bodily harm caused to others, are not apposite. These naked licenses could only be identified as authority for the operation of the Pearl Jack, if at all, by establishing that Barron, Sr., was a co-partner or joint adventurer with his son and Dennison. This, as we have observed, was not achieved, and the record clearly shows that at the time of the accident Barron, Sr., did not own or have any interest in the ownership of the Pearl Jack, did not operate it, and never operated it and did not own or operate any other boat of the firm.

The judgment of dismissal is affirmed.