Matter of the Petition of Horace A. HOCKING, as the owner of THE POMPANO II, her engines, etc., in a cause of limitation of or exoneration from liability.

Civ. A. No. 127–56.

United States District Court
D. New Jersey.

Jan. 28, 1958.

See also 146 F.Supp. 207.

Smith, Slingerland, Trauth & Holtz, Newark, N. J., by Charles W. Hagen, Richard A. Hagen, New York City, and David A. Wallach, Brooklyn, N. Y., for petitioner.

Baker, Garber & Chazen, Hoboken, N. J., by Jack Steinman, New York City, Jerome L. Yesko, Paterson, N. J., by Charles Stein, New York City, for claimants.

WORTENDYKE, District Judge.

On February 17, 1956, Horace A. Hocking, as owner of a 21-foot motor boat, filed in this Court his verified petition to limit his liability for damages for personal injuries sustained by the occupants of an outboard motor powered row boat in a collision between the vessels which occurred on September 5, 1955, in navigable waters of the United States in this District. The motor boat, at the time of the collision, was being operated by the owner's fifteen year old son, who was accompanied by seven youthful invited guests of the operator. In the row boat at the time of the collision, in addition to Storr who was operating it, were three other adults and two young boys.

The petition to limit the liability of the owner of the motor boat represented that an action or actions had been commenced in this Court for the recovery of damages aggregating $305,000 for personal injuries suffered by occupants of the row boat and that the commencement of another similar action was believed by petitioner to be imminent. Alleging that the claims asserted against petitioner greatly exceed in amount the $3,500 value which he represented as that of his interest in the motor boat, petitioner prays relief by way of limitation of liability under the provisions of 46 U.S. C.A. § 183 et seq. In compliance with this Court's order the required *ad interim* stipulation for value was filed by petitioner, a monition was issued, served and published, citing all claimants to file proof of their claims in the present proceeding, and the commencement and prosecution of all actions upon their claims, *except* in this proceeding, was thereby stayed. Claims were thereafter accordingly filed and the claimant, Ernest E. Storr, having been duly impleaded in this cause under the 56th Admiralty Rule, 28 U.S.C., an answer in his behalf was thereafter filed.

The petition herein was duly brought on for hearing before the Court on December 17 and 18, 1957, and upon the evidence thereon presented, I make the following findings of fact and conclusions of law.

### Findings of Fact

1. On September 5, 1955 (Labor Day), between 3:30 and 4:30 p. m. Horace A. Hocking, the petitioner herein, was the owner of a 21-foot motor boat named Pompano II, powered with a 200

horsepower inboard motor capable of a top speed of 42 miles per hour.

2. The value of petitioner's interest in said motor boat on the date aforesaid has been estimated to be $3,500.

3. Between the hours aforesaid petitioner's motor boat was being operated by his fifteen year old son, Arthur Hocking, on navigable waters of the United States in the Intracoastal Waterway near Shipbottom, New Jersey.

4. At the time and place aforesaid the motor boat collided with a row boat, rented by one or all of its occupants, and which was being propelled by an outboard motor owned by claimant Storr. John W. Turner, his wife, Florence Turner, their two sons (aged respectively 6 and 8 years), Elizabeth A. Gross, and Ernest E. Storr, were riding in the row boat at this time. Each of the occupants of the row boat sustained some bodily injury in consequence of the collision.

5. At the time of the collision the row boat was being operated by claimant Ernest E. Storr.

6. Petitioner was not aboard the motor boat at the time of the collision, the vessel being operated by petitioner's son who had seven invited guests aboard the vessel with him.

7. Although the motor boat was owned by the petitioner, it was operated exclusively by his son, Arthur Hocking, who was permitted to use it whenever he chose, both in the day time and during the night. The boy had received competent instruction in the use of the motor boat from several qualified instructors, and had been operating powered boats, both those with outboard and those with inboard motors, since he was ten years of age. On a previous occasion he had been permitted by a local fisherman to handle the latter's 42-foot twin-screw power boat, which he accomplished satisfactorily to the owner.

8. While the boy, Arthur, had been observed operating the motor boat at high speed when boat traffic was congested, and on one occasion so close to where persons were bathing as to evoke a warning from the local police, he had not been involved in any previous accident, with the exception of having grounded this vessel on one occasion upon a sand bar, as a result of the recession of the tide, and petitioner had no knowledge of any display of recklessness or incompetence by his son while operating the motor boat or other boats.

9. The collision occurred near the northerly edge of a narrow (20 feet wide) subsidiary channel approximately 300 yards in length, which extends easterly toward Long Beach Island from the north-south main channel between that Island and the marshy southeasterly portion of Cedar Bonnet, which is located due west of Shipbottom in Manahawkin Bay and which forms a part of the Intracoastal Waterway.

10. Just prior to the collision, the motor boat had turned from a southerly course in the main channel into an easterly course in the subsidiary channel, and, at the same time, the rowboat was moving through shallow water from a point to the north of and toward the subsidiary channel just off the Long Beach Island westerly shore. As the motor boat continued its course in an easterly direction toward the Long Beach Island shore, and while a short distance from the row boat, the latter, traveling at a speed of only two or three miles an hour, altered its course into a course parallel to or coincident with that in which the motorboat was heading, in order to avoid collision, but the bow of the motor boat struck and over-ran the stern of the row boat when both vessels were about 100 feet offshore and near the northerly edge of the subsidiary channel.

11. At the time of the collision, the motor boat was traveling at a speed estimated at between 16 and 35 miles per hour. As the motor boat was making its turn from the main channel into the subsidiary channel its operator observed the row boat which was then at a distance of approximately 50 feet from the junction of the two channels, but the

motor boat operator did not again see the row boat until the collision occurred. The elevation of the bow of the motor boat, caused by the effect upon the conformation of its hull of the speed at which it was traveling through the water after entering the subsidiary channel, obstructed completely its operator's view of the row boat.

12. There were other small boats in the general vicinity of the collision when it occurred, and the width of the channel in which the motor boat was moving was constricted by the presence of shoals on either side.

13. No lookout was maintained by the operator of the motor boat nor were other appropriate and available measures taken to avoid the collision after the bow of the motor boat became elevated to a point obstructing the operator's forward view of the channel and adjacent waters.

14. No whistle, horn or similar audible signal was given by the operator of the motor boat as its collision with the row boat became imminent, although some of the occupants of the row boat screamed, shouted and stood up waving their arms when the collision appeared inevitable.

### Conclusions of Law

1. This proceeding is within the admiralty jurisdiction of this Court and is authorized by the provisions of 46 U.S.C.A. § 183 et seq. This Court also has jurisdiction of the parties to this proceeding.

2. The collision between petitioner's motor boat and the row boat containing the claimants referred to in the foregoing findings of fact was principally due to the fault of Arthur Hocking, the operator of the motor boat.

3. Immediately prior to the collision Arthur Hocking was operating his father's boat at a speed excessive under the circumstances, failing as he did to maintain a proper lookout to ascertain the presence and course of the row boat or to take appropriate and available measures to avoid collision therewith.

4. Respondent-impleaded, Ernest E. Storr, is not liable because the motor boat was gravely at fault and such fault as Storr may have been guilty of was venial or merely technical, did not contribute to the collision, and may therefore be disregarded.

5. The motor boat was not a "seagoing vessel" as defined in § 183(f) of Title 46 of the United States Code Annotated.

6. The collision aforesaid between the motor boat and the row boat was occasioned without the privity or knowledge of the petitioner, Horace A. Hocking, the owner of said motor boat.

7. The petitioner, Horace A. Hocking, as the owner of said motor boat, is entitled to limit his liability for any injury resulting from the collision aforesaid to the amount or value of petitioner's interest in said motor boat.

An order may be entered conforming to the findings and conclusions aforesaid.