In the Matter of the Complaint of BUILD-ERS SUPPLY COMPANY, as owner of the CHRIS CRAFT for exoneration from or limitation of liability.

Civ. No. 67–C–2004–C.

United States District Court
N. D. Iowa,
Central Division.

Jan. 23, 1968.

Don W. Burington, Mason City, Iowa, for petitioner.

Connolly, O'Malley & Conley, Des Moines, Iowa, for claimants.

## MEMORANDUM AND ORDER.

HANSON, District Judge.

This ruling is predicated upon a motion by claimants to dismiss a petition to limit liability and to dissolve an Order restraining claimants from prosecuting other actions.

The petitioner, Builders Supply Company, instituted this action under 46 U.S. C., Section 183 et seq., to limit its liability in relation to a boating accident in Clear Lake, Iowa, on July 3, 1966. The petition alleges that Builders Supply Company was the owner of a Chris Craft eighteen foot runabout which was built in 1949. It is claimed that while one Larry Di Paglia was operating the Chris Craft with the claimants aboard a fire and explosion occurred injuring the claimants. The petitioner's prayer, *inter alia*, seeks a declaration of the extent of its liability and limitation of such liability to the value of its interest in the Chris Craft.

The claimants assert that is not properly within the admiralty and maritime jurisdiction of the United States. It is urged that Clear Lake is not a navigable body of water or waterway, and as such, is not encompassed within the boundaries of admiralty law. In support of their contention, the claimants have tendered documents of an evidentiary nature, Mr. Robert E. Clevenstine, the Chief of the Operations Division of the Army Corps of Engineers, Rock Island Division, states: "Clear Lake, located in Cerro Gordo County, Iowa, is not a navigable waterway of the United States." An affidavit of Roy L. Downing, Superintendent of Waters of the Iowa Conservation Commission acknowledges that:

"Clear Lake, situated in Cerro Gordo County, Iowa, is a completely inland, landlocked lake, and in its ordinary condition does not by itself or by uniting with any other waters, form a

continued highway over which commerce is or may be carried on with other states or foreign countries in the customary modes in which such commerce is conducted by water.

I further state that said Clear Lake, located in Cerro Gordo County, Iowa, is not a navigable waterway of the United States."

A map of Cerro Gordo County confirms that Clear Lake is a small landlocked lake without any coalescing waterways, streams, or other watercourse.* The petitioner does not dispute these facts.

The petitioner counters that a reading of Sections 183(a) and 188 in conjunction indicates that jurisdiction attaches to accidents occurring on lakes, without qualification. Section 183(a) provides:

"The liability of the owner of any vessel, whether American or foreign, for any embezzlement, loss, or destruction by any person of any property, goods, or merchandise shipped or put on board of such vessel, or for any loss, damage, or injury by collision, or for any act, matter, or thing, loss, damage, or forfeiture, done, occasioned, or incurred, without the privity or knowledge of such owner or owners, shall not, except in the cases provided for in subsection (b) of this section, exceed the amount or value of the interest of such owner in such vessel, and her freight then pending."

Section 188 dictates that:

"Except as otherwise specifically provided therein, the provisins of sections 182, 183, 183b–187, and 189 of this title shall apply to all seagoing vessels, and also to all vessels used on lakes or rivers or in inland navigation, including canal boats, barges, and lighters."

██ No citation of authority is necessary for the principle that Congress is delegated paramount authority to control all public navigable waters by virtue of its constitutionally rooted power over admiralty and maritime matters and regulation of commerce. The Limitation Act was derived from those constitutional provisions. Providence & N. Y. S. S. Co. v. Hill Mfg. Co., 109 U.S. 578, 3 S.Ct. 379, 27 L.Ed. 1038 (1883); The Katie, 40 F. 480 (D.Ga.). The classic definition of navigable waters, which circumscribes and delineates the jurisdiction of Congress, is contained in The Daniel Ball, 10 Wall. 557, 565, 19 L.Ed. 999 (1870):

"And they constitute navigable waters of the United States within the meaning of the Acts of Congress, in contradistinction from the navigable waters of the States, when they form in their ordinary condition by themselves, or by uniting with other waters, a continued highway over which commerce is or may be carried on with other states or foreign countries in the customary modes in which such commerce is conducted by water."

See also United States v. Appalachian Electric Power Co., 311 U.S. 377, 61 S.Ct. 291, 85 L.Ed. 243 (1940); The Montello, 20 Wall. 430, 22 L.Ed. 391 (1874); 1 Benedict on Admiralty 92, 96 (6th ed.).

In Butler v. Boston & Savannah Steamship Co., 130 U.S. 527, 9 S.Ct. 612, 32 L.Ed. 1017 (1889), the Supreme Court held the territorial confines of the limited liability provisions and the general admiralty law to be the same. On 557, 9 S.Ct. on 619, it observed:

"It being clear, then, that the law of limited liability of ship-owners is a part of our maritime Code, the extent of its territorial operation (as before intimated) cannot be doubtful. It is necessarily co-extensive with that of the general admiralty and maritime jurisdiction, and that by the settled law of this country extends wherever public navigation extends—on the sea and the great inland lakes, and the navigable waters connecting therewith."

See also Ex Parte Garnett, 141 U.S. 1, 11 S.Ct. 840, 35 L.Ed. 631 (1891).

A number of authorities have directly excluded landlocked lakes located wholly within one state, without natural ingress and egress to commerce, from the definition of navigable waters. See, e. g., The

---

* See Appendix.

Robert W. Parsons, 191 U.S. 17, 24 S.Ct. 8, 48 L.Ed. 73 (1903); Marine Office of America v. Manion, 241 F.Supp. 621 (D.Mass.); Shogry v. Lewis, 225 F. Supp. 741 (D.Pa.); In re Keller's Petition, 149 F.Supp. 513 (D.D.C.). The same has been held to be true as to the statutory scheme of limited liability and petitioner's argument that a tie-in of Sections 183 and 188 withdraws the limitation of liability statute from the general maritime territorial jurisdiction was specifically rejected. In re Howser's Petition, 227 F.Supp. 81 (D.N.C.); Johnson v. Warthman, 227 F.Supp. 135 (D.Or.); In re Madsen's Petition, 187 F.Supp. 411 (D.N.Y.); The Pearl Jack, 79 F.Supp. 802 (D.Mich.), aff'd Kulack v. The Pearl Jack, 178 F.2d 154 (6 Cir.).

The early case of The Katie, supra, made a thorough and exhaustive analysis of the provisions of the original Act of March 3, 1851, and the Amendments of June 19, 1886, and the case law and held that the law affected inland navigation but not purely internal commerce. The navigability of the waters was deemed an indispensable ingredient of inland navigation.

Several, and perhaps all, of the decisions involving lakes have considered the profound policy ramifications which would arise from the assumption of admiralty jurisdiction over all lakes. The Court in In re Howser's Petition, supra, 277 F.Supp. at 85, notes that:

"Pleasure boating, now within the means of every average person, is on the increase on each of the hundreds of lakes to be found, and inevitably, as highway accidents have multiplied from the ownership and use of automobiles, so will the small boat accidents on these many lakes."

As Judge Foley stated in In re Madsen's Petition, supra, 187 F.Supp., at 412–413:

"I have had several of these proceedings instituted with me, and in In re Reading's Petition (The Crow's Nest IIA), D.C., 169 F.Supp. 165, affirmed 2 Cir., 271 F.2d 959, I expressed my thoughts as to my difficulty to relate the principle of limitation to encourage investment in shipping and shipbuilding with the happening of these small boat accidents where the owner is a private individual usually covered by insurance. I am sure the ever growing number of purchasers of these small pleasure craft do not check the limitation statutes before they purchase and never will. The financial protection and regulation necessary to alleviate the burden of society where the widow and orphan, maimed and crippled, are with us as a result of unfortunate highway accidents seem to me just as important in these boating accidents. Much of the complexity in this respect is for the legislative wisdom to solve, with realization that the general legislation on limitation may have harsh and oppressive impact in certain circumstances that may fairly and equitably be removed. Petition of Colonial Trust Co., D.C., 124 F.Supp. 73. For example, the absent owner of the automobile may be responsible for the negligence of the authorized operator in New York. See In re Petition of Hocking, D.C., 158 F.Supp. 620."

The Court recognizes that the case of Loc-Wood Boat and Motors v. Rockwell, 245 F.2d 306 (8 Cir.), held the Lake of the Ozarks to be a navigable water within the admiralty and maritime jurisdiction of the United States, but that case is critically factually divergent from the case at hand. The Lake of the Ozarks consisted of the waters of the Osage River which had impounded by the construction of a dam. The River had historically been navigable and it remained under the control of the Commerce Department which licensed and inspected vessels operating on the Lake of the Ozarks. See In re Wood's Petition, 145 F.Supp. 818 (D. Mo.) (lower court opinion.) This view at the Loc-Wood decision concurs with the unanimous opinions of other Courts having occasion to interpret it. See Johnson v. Warthman, supra; Ingram v. Associated Pipeline Contractors, Inc., 241 F.Supp. 4 (D.La.).

It is true that a literal reading of Sections 183 and 188 might lead to a polar result but common sense is an ingredient in these cases and "common sense often makes good law." Peak v. United States, 353 U.S. 43, 46, 77 S.Ct. 613, 615, 1 L.Ed.2d 631 (1956).

The petitioner cites the cases of Petition of Colonial Trust Co., 124 F.Supp. 73 (D.Conn.) and The Trim Too, 39 F. Supp. 271 (D.Mass.) in support of its tenuous position. The Court cannot glean any strength for petitioner's position from the two cases. In Petition of Colonial Trust Co., an explosion occurred on the Charlotte while she was in winter storage in a boat house in Stony Creek, Connecticut, causing injuries to the Claimant. The Charlotte was a pleasure yacht which "was normally restricted to the waters of Long Island Sound in the immediate vicinity of Stony Creek." The Trim Too case similarly involved an explosion on a yacht which had been stored for the winter. The Trim Too "had been in use by the petitioner during a part of the yachting season of 1937 and during the yachting seasons of 1938 and 1939." In the fall of 1939, she was transported by the marine railway of James E. Graves of Marblehead, Massachusetts, to her resting place for the winter months.

In both cases, the Courts permitted the claimants to invoke the limited liability statute on the basis that the statute was applicable to non-marine as well as marine torts. The Court readily recognizes that rule to be legally sound, but it does not inure to petitioner's benefit in the case at bar. In both cases, there was an obvious underlying connection with navigable waters in that the yachts were usually used on the Atlantic Ocean. They plainly do not hold that admiralty jurisdiction reaches non-maritime torts, no matter what the locale. They stand solely for the proposition that vessels which are temporarily disassociated from use in navigable waters are not taken out of the purview of the limitation statute. Indeed, the Court in Petition of Colonial Trust Co., 124 F.Supp. at 75, affirms these conclusions:

"For the purpose of the limitation of liability statute it should not be held that they lose their maritime character as *sea-going vessels* merely because they are temporarily stored ashore as a regular part of their maintenance. There is reason behind a policy of encouraging the building of pleasure craft as well as larger vessels. It gives additional work to shipyards whose men are thus enabled to preserve their skills; it gives experience to those who operate the vessel on the seas *and in navigable waters * * *."* (Emphasis added.)

See also, The Trim Too, supra, 39 F. Supp. at 273.

There have been numerous cases in which the non-maritime tort jurisdiction has been assumed, where for example, vessels operating in navigable waters have collided with some land-anchored object. See. e. g., Richardson v. Harmon, 222 U.S. 96, 32 S.Ct. 27, 56 L.Ed. 110 (1911); In re Pennsylvania R. Co., 48 F.2d 559 (2 Cir.); Tracy Towing Line, Inc. v. City of Jersey City, 105 F.Supp. 910 (D.N.J.); The Irving F. Ross, 8 F. 2d 313 (D.Mass.). It would take a prodigious step to say that the limitation law encompasses torts occurring in relation to the use of small craft in non-navigable waters.

The distinction drawn by this Court appears to have been articulated in In re Eastern Dredging Co., 138 F. 942 (D. Mass.). The Court declared on p. 945 that:

"There is no expression in the act, as it now stands, to indicate that the nature of the employment in which a vessel is engaged is to be considered in determining whether or not the act is to apply to her. That question is made to depend entirely upon the waters whereon she is used. The waters whereupon the petition alleges this scow to have been used are unquestionably waters within the admiralty jurisdiction * * *."

■ Therefore, it is manifest that Clear Lake does not constitute a navigable water susceptible to employment in its natural and ordinary condition or by

coalescing with other waters as a highway of commerce in the sense of customary modes in which such commerce is transacted.

Accordingly, it will be ordered that the motion to dismiss will be granted and the restraining order dissolved.

APPENDIX