Pansy F. RICHARDSON, Donald B. Richardson, Patrick S. Richardson, Joseph S. Richardson, Larry S. Richardson, and Carla Richardson

v.

FOREMOST INSURANCE COMPANY, Shirley Eliser and June G. Allen.

Civ. A. No. 76–280.

United States District Court, M. D. Louisiana.

May 23, 1979.

Roy Maughan, Maughan, Atkinson & Martin, Ltd., Baton Rouge, La., for plaintiffs.

Arthur H. Andrews, Franklin, Moore & Walsh, Baton Rouge, La., for Foremost Ins. Co. and Shirley Eliser.

Victor L. Marcello, Talbot, Sotile, Carmouche, Waguespack & Marchand, Donaldsonville, La., for June G. Allen.

E. GORDON WEST, District Judge:

The sole issue before the court is whether or not, under the admitted facts in this case, this court is vested with "admiralty jurisdiction." The incident giving rise to this litigation involved a collision between

two "pleasure" boats. One was an eighteen foot pleasure boat powered by a 185 h.p. Johnson outboard motor that was being used for water skiing purposes at the time of the accident. The other was a sixteen foot "bass boat" powered by an outboard motor that was used exclusively for pleasure fishing. At the time of the accident the two boats were headed in opposite directions on the Amite River. The point of impact was in a curve some one-half to three-quarters of a mile downstream from the French Settlement bridge. The bass boat was proceeding northward and apparently made a left turn into the path of the southbound ski boat.

■ Assuming, for the purpose of this opinion, that the Amite River, at the point of collision, is "navigable", the dispositive issue, in this case, is whether or not there is a "sufficient relationship to traditional maritime activity" to warrant the extension of admiralty jurisdiction to this litigation.

■ For the reasons hereinafter set forth, we conclude that under the facts of this case this court is not vested with admiralty jurisdiction.

The following facts are undisputed:

(1) One boat was used for pleasure boating, such as boat riding and water skiing, and at the time of the accident the boat was actually pulling a skier on a zip sled;

(2) The other boat was used exclusively for pleasure fishing and was described as a bass boat;

(3) Neither boat had ever been used in any "commercial maritime activity" before the accident;

(4) At the time of the accident neither boat was involved in any "commercial maritime activity" of any sort;

(5) Neither of the two drivers of the boat were being paid to operate the boat nor was this activity in any way a part of their regular type of employment;

(6) None of the passengers on either boat were engaged in any kind of "traditional maritime activity" either before or at the time of the accident;

(7) Neither of the boats involved were under hire in any traditional maritime form;

(8) There is no evidence to indicate that any "commercial activity", even in the broadest admiralty sense, had ever been previously engaged in by either of the boats in question, and in fact the two boats would have to be classified as "purely pleasure craft", not in any way "involved in commerce"; and,

(9) There was no other instrumentality involved in this accident that had even a minor relationship to "admiralty" or "commerce", i. e. a buoy, barge, oil drilling apparatus, etc.

In short, this case squarely presents the factual issue of whether or not "admiralty jurisdiction" must be extended to an accident occurring between two pleasure boats in the purest sense of the word, and in which there is absolutely no "commercial" or "traditional maritime activity" whatsoever involved.

In our analysis it must first be noted that some of the most respected admiralty commentators lean heavily toward the stand now taken by this court that this particular case is not one which was meant to be covered by the admiralty jurisdiction of the federal courts.

Professors Gilmore and Black state the following in their treatise, *The Law of Admiralty*, Second Edition:

"The following are doubtful areas, (for invoking admiralty jurisdiction) where generalization is dangerous:

Torts occurring on navigable waters, but having no other maritime connection." (*The Law of Admiralty*, Second Edition, pp. 27, 28; parenthesis added)

However, Professors Gilmore and Black do not stop here. Their treatise contains numerous quotes aimed at the very heart of this case at bar; such as:

"In the main, the outlines of the jurisdiction seem to have been pretty well drawn. Its evaluation requires the bal-

ancing of two factors pulling in opposite directions. First, if there is any sense at all in having a separate basis for admiralty jurisdiction in the federal courts, it must be because there is a federal interest that can best be implemented by thus dealing with the major concerns of the *shipping industry*—with all of them, and not just with a few of them selected on antiquarian criteria."

"Whether a given inclusion within or exclusion from the jurisdiction is warranted must depend on the general sense and policy of having the jurisdiction at all. It is hard to think of any better reason for having this jurisdiction than its aptness for providing a special-industry court for the *maritime industry*. If this is right, then some modern decisions wander far off the mark. One thinks of the cases bringing airplane accidents within the jurisdiction, just because the plane happens to crash on navigable waters, and the inclusion of such mishaps as surfboard accidents, or *motorboat accidents* on lakes substantially landlocked. *Happily, these cases have* (to some not yet certain extent) *been overruled, at the highest level. It may be hoped that this overruling is thoroughly general* . . . *Ideally, the jurisdiction out* (sic) *to include those and only those things principally connected with maritime transportation. Summarily, the lower courts have been over-inclusive as to torts,* and under-inclusive as to contracts." (*The Law of Admiralty*, Second Edition, pp. 29–31; emphasis added)

*Benedict on Admiralty*, Seventh Edition (Revised), is another important treatise in which several selected quotes would strongly indicate that the particular facts in this case do not merit the extension of admiralty jurisdiction:

" . . . maritime law is not a monistic system. Where, although a matter is maritime, there may be overwhelming considerations requiring state regulation and if such state law does not disturb the general uniformity of maritime law, its application to cases 'maritime but local' will be valid. It is not always easy in borderline cases to determine how the accommodation between state and federal concern should be made. One distinction appears to be that where obligations are imposed by virtue of the authority of state or Federal government, the court must attempt to balance the interests, but where the obligations are assumed voluntarily, as in a contract, they ought to be judged by the law applying to the real nature of the transaction." (*Benedict on Admiralty*, Seventh Edition (Revised) Section 127, pp. 8–47 thru 8–49)

Louisiana, with its roots sunk deeply into the maritime arena, has been one of the leading states in the molding and shaping of the constraints of admiralty jurisdiction. In a recently published book on this subject several noted Louisiana attorneys spoke about the factual situation which now presents itself to this court:

"The second constructive reduction of the admiralty jurisdiction is the *requirement of a maritime connection along with the locus of the accident to support maritime jurisdiction.* . . . The court mentioned that in the Fifth Circuit's decision in *Watts v. Zapata Offshore Co.,* it had been said that only minimal maritime connection was required once you had the sufficient maritime locus.

"What, then, were the considerations of whether there was sufficient maritime connection for this accident? The *Peytavin* court, in finding there was not sufficient maritime connection in that case pointed out that neither the parties, nor the nature, nor the apparent cause of the accident, nor the injury sustained demonstrated any further connection with maritime interests. It is necessary to keep in mind what considerations are involved in the determination of "maritime connections."

"As a result, *now not only do you have to have the locus, you need the pure maritime connection for admiralty jurisdiction.*

"The district courts are going to have a struggle too, because it would appear that they must now come to grips with

something previously unheard of: *maritime connexity as an adjunct to the locus theory.*" (Recent Development in the Law of Maritime Torts, edited by Boland and Dodd; pp. 22–26 (1972))

The foregoing analysis leads us directly to two cases which must be closely examined by this court. *Executive Jet Aviation, Inc. v. City of Cleveland, Ohio,* 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454, 1973 AMC 1 (1972); and *Kelly v. Smith,* 485 F.2d 520, 1973 AMC 2478 (CA 5–1973).

In *Executive Jet* the United States Supreme Court recognized the time honored rule that the "locality" of the wrong was traditionally the deciding point in whether or not admiralty jurisdiction was present. However, in an in-depth review of prior jurisprudence the court recalled some serious difficulties with the blind application of the locality test. Based on this the court stated:

"In sum, there has existed over the years a judicial, legislative, and scholarly recognition that, in determining whether there is admiralty jurisdiction over a particular tort or class of torts, reliance on the relationship of the wrong to traditional maritime activity is often more sensible and more consonant with the purposes of maritime law than is a purely mechanical application of the locality test." (93 S.Ct. at 501)

Of course, *Executive Jet* dealt with an aircraft accident. This is not the situation in the case at bar. However, the principles of *Executive Jet,* and more importantly its progeny, will have an impact on this case.

Likewise, in *Kelly v. Smith,* supra, the Fifth Circuit recognized the absurdity of applying the "strict locality test", and stated:

"The analysis and thrust of *Executive Jet,* coupled with our decision in *Peytavin,* dictate the conclusions that maritime locality alone is no longer sufficient to sustain maritime jurisdiction, and that the wrong must bear a significant relationship to maritime activity." (485 F.2d at 524)

The court in *Kelly* was steadfast in adhering to a policy whereby some significant relationship to a recognized maritime activity was required before admiralty jurisdiction would be invoked. (see generally 485 F.2d at 524).

With these two cases as a backdrop, our examination continues with the "locality plus" test that was discussed in *Kelly v. Smith,* supra. The court in *Kelly* stated that it must "look to all the circumstances for a substantial maritime relationship. Both *Peytavin* and *Executive Jet* offer guidelines for the determination." (485 F.2d at 525) The court then went on to list certain factors in that case which caused it to invoke the admiralty jurisdiction:

"From the facts and analysis of *Executive Jet* and *Peytavin* we can discern factors to be considered in the circumstances before us: the functions and roles of the parties; the types of vehicles and instrumentalities involved; the causation and the type of injury; and traditional concepts of the role of admiralty law." (485 F.2d at 525)

The Fifth Circuit concluded its analysis with the statement that: "Policy militates toward admiralty jurisdiction in this case." (485 F.2d at 526) It is not clear how much of the "policy" involved dealt with the fact that the plaintiffs in *Kelly* would have been barred due to the applicable state prescriptive period as opposed to the doctrine of laches used in admiralty. However, it did play some part. (see generally 485 F.2d at 526) The prescription versus laches argument is not present in the instant case since suit was filed well before one year elapsed from the date of the accident.

Most importantly to this case, the discussion in the *Kelly* case indicated that there was either some "commercial activity" or some "traditional maritime connection" present to invoke admiralty jurisdiction. It seems clear from the facts in *Kelly* that the case dealt, at least to some degree, with what this court might term "piracy" in that the plaintiffs were admittedly poaching on the land which the defendant, J. C. Smith, had been hired to protect.

When the location of the injury is on or in a navigable waterway, the requirement of a "traditional maritime connection" becomes less stringent. In *Kelly v. Smith,* supra, the poaching or piracy, with its commensurate miniwar between the parties in a stretch of the Mississippi River which is conclusively navigable, was enough to trigger the admiralty jurisdiction of the federal court. However, in the case at bar this court can find no "traditional maritime connection" between the injuries received and the location of the tort. Admiralty jurisdiction was created to serve the commercial shipping industry's interests by providing a stable and constant body of law which is to be used in the resolution of litigation arising between those people actually engaged in it. The tremendous increase in the number of small pleasure boats, whether for skiing or pleasure fishing, is a contemporary problem. When the owners of these watercrafts have absolutely no commercial or traditional maritime interests which require the protection of the admiralty side of the federal judiciary, then admiralty jurisdiction should be withheld. In this context Professor Stoltz feels that the operation of small pleasure craft is so "local" in nature that a uniform body of law is a detriment and that instead, the jurisdiction of these cases should be transferred to the states. Professor Stoltz stated:

" . . . where commerce stops, the need for uniformity also ends. If commerce is not involved, there is no national interest in uniformity and there is every reason associated with federalism for local power to govern events locally that have only local impact." (*Pleasure Boating and Admiralty: Erie at Sea,* 51 Cal. L.R. p. 661)

Once again we see another commentator agreeing that when there is a complete lack of any "commercial" or "traditional maritime connection", as in the case at bar, then admiralty jurisdiction should be withheld.

This court's decision that, in this particular type of case, there is no admiralty jurisdiction, is further bolstered by several other cases. At first blush each of these other cases might seem to indicate that this court is in error. However, upon a close examination it can be readily determined that in each of the factual situations some quality of "commerce" or "traditional maritime activity" was connected with the accident.

In *Kaiser v. Travelers Insurance Co.,* 359 F.Supp. 90 (E.D.La.–1973), the connection was the fact that the water skier hit a sunken barge. In *Gele v. Chevron Oil Company,* 574 F.2d 243 (CA 5–1978), the connection was that the pleasure boat collided with a sunken barge. And finally, in two cases brought before this court, *Butler v. Amoco Production Company* (CA No. 74–94) and *Langlois v. Dow Chemical Company,* (CA No. 78–402), we have extended admiralty jurisdiction to cases in which the only connection was that each of the pleasure boats involved struck a pipe anchored to an old drilling rig which was a few inches under the water level in a bayou.

As can be seen from each of these cited cases, there was some "commercial" or "traditional maritime" connection, regardless of how small, which, when coupled with the location of the accident, could properly invoke the admiralty jurisdiction of a federal court. However, in the case at bar no such minimal connection exists and, based on the guidelines of *Peytavin* and *Executive Jet,* admiralty jurisdiction cannot be properly extended, regardless of the location of the accident.

Just as the court in *Kelly v. Smith,* supra, set forth a non-exclusive list of factors to be considered, this court also finds such a listing to be helpful. When a court considers whether or not to extend admiralty jurisdiction to a case involving purely pleasure crafts, the following list offers some guidelines to aid in the admiralty jurisdiction question:

(1) Was the boat(s) involved being used for a purely pleasure type operation;

(2) Has the boat(s) involved ever been previously used in any type of commercial or maritime operation;

(3) Was the driver of the boat(s) under hire;

(4) Were any of the passengers under hire to perform any traditional maritime function;

(5) Was there any instrumentality of commercial or maritime connection involved in any way with the accident;

(6) Are there any policy considerations involved which should encourage the court to find in favor of admiralty jurisdiction; and/or

(7) Are there any traditional concepts or modern applications of the role of admiralty which could be involved that would invoke admiralty jurisdiction.

This list is merely illustrative of the type of indepth analysis which a court should undertake before deciding whether or not admiralty jurisdiction is present in a particular case involving one or more purely pleasure boats. In the case at bar all of the answers to the aforementioned list are in the negative. Had any one of them been in the affirmative, then that fact, coupled with the location of the tort, might be sufficient to invoke the admiralty jurisdiction of the federal court.

From the Laws of Oleron to *Executive Jet* the role of "admiralty jurisdiction" has undergone many a metamorphosis. It will probably continue to do so. This court finds that one metamorphosis which must be recognized is that when an accident involving one or more vessels occurs on or in a navigable body of water and involves purely pleasure boats in which there is not the slightest scintilla of either "commercial" activity or "traditional maritime activity" involved, then the admiralty jurisdiction of the federal court should not be invoked.

Therefore, based on the foregoing factual and legal analysis it is the opinion of this court that plaintiff's claim cannot be maintained in admiralty. The plaintiff's suit will be dismissed.

Judgment will be entered accordingly.