Ann M. OTTO and Thomas Otto, her husband, Plaintiffs,

v.

Jerome M. ALPER and Andrew M. Alper, Defendants and Third-Party Plaintiffs,

v.

B. Wilson REDFEARN, Third-Party Defendant.

Civ. A. No. 79–298.

United States District Court, D. Delaware.

May 19, 1980.

Wayne N. Elliott and Vernon R. Proctor, of Prickett, Jones, Elliott & Kristol, Wilmington, Del., for plaintiffs.

William F. Taylor and Barry M. Willoughby, of Young, Conaway, Stargatt & Taylor, Wilmington, Del., for defendants and third-party plaintiffs.

Edmund N. Carpenter, II, and Alesia Ranney-Marinelli, of Richards, Layton & Finger, Wilmington, Del., for third-party defendant.

## OPINION

STEEL, Senior Judge:

Third party defendant B. Wilson Redfearn has moved, pursuant to Fed.R.Civ.P.

954

12(b)(1), to dismiss the complaint and the third-party complaint in this action, on the ground that this Court lacks subject matter jurisdiction. The suit arises out of a boating accident on August 7, 1977, on Rehoboth Bay, at Rehoboth Beach, Delaware. According to the complaint and third party complaint, on that date plaintiff Ann M. Otto was a passenger on a 16 foot sailboat owned and operated by Redfearn. She was injured as a result of a collision between the sailboat and a 21 foot motorboat operated by defendant Andrew Alper and owned by his father, defendant Jerome Alper. Ann Otto and her husband sued the Alpers, alleging that the collision was caused by Andrew Alper's negligence and that Jerome Alper negligently entrusted the motorboat to Andrew and allowed Andrew to operate an unseaworthy boat. The Alpers in turn impleaded Redfearn, alleging that his negligence caused the collision, and that Redfearn should in turn be liable for any sums that may be adjudged against the Alpers in favor of the Ottos.

■ The complaint alleges jurisdiction under 28 U.S.C. § 1333 and 46 U.S.C. § 740, which vest the District Court with admiralty and maritime jurisdiction. Redfearn argues that the admiralty and maritime jurisdiction does not extend to accidents, like this one, that involve purely pleasure craft with no connection to commerce or shipping. Both the Ottos and the Alpers argue against dismissal for lack of jurisdiction.

Redfearn bases his argument primarily on *Executive Jet Aviation, Inc. v. City of Cleveland*, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972). In that case, the plaintiff, whose jet aircraft sank in Lake Erie after a loss of power within moments of takeoff, attempted to bring an action for the plane's loss in federal court under the

admiralty jurisdiction. In unanimously affirming the District and Circuit Courts' denials of jurisdiction, the Supreme Court first discussed the traditional "locality rule" for determining whether a tort was maritime. Under this rule, if a wrong occurred on navigable water, the action was within admiralty jurisdiction; if the wrong occurred on land, it was not. *Id.* at 253, 93 S.Ct. at 497. Noting, however, that "perverse and casuistic borderline situations" have demonstrated problems with the locality rule, *id.* at 255, 93 S.Ct. at 498, the Court held that unless "the wrong bear[s] a significant relationship to traditional maritime activity . . . claims arising from airplane accidents are not cognizable in admiralty." *Id.* at 268, 93 S.Ct. at 504.

Redfearn suggests that *Executive Jet* requires a significant relationship to tradirional maritime activity in all cases, not just those involving aircraft. Several Courts of Appeals have taken this view. *Kelly v. United States*, 531 F.2d 1144, 1145, 1146 (2d Cir. 1976); *St. Hilaire Moye v. Henderson*, 496 F.2d 973, 977 (8th Cir.), *cert. denied*, 419 U.S. 884, 95 S.Ct. 151, 42 L.Ed.2d 125 (1974); *Kelly v. Smith*, 485 F.2d 520, 524 (5th Cir. 1973), *cert. denied*, 416 U.S. 969, 94 S.Ct. 1991, 40 L.Ed.2d 558 (1974). The Third Circuit, on the other hand, interprets *Executive Jet* as limited by its own terms to aircraft cases. *Edynak v. Atlantic Shipping, Inc.*, 562 F.2d 215, 220 (3d Cir. 1977), *cert. denied*, 434 U.S. 1034, 98 S.Ct. 767, 54 L.Ed.2d 781 (1978). Because no aircraft were involved in the instant suit, the "locality rule" applies, and this action falls within the admiralty jurisdiction of the District Court.*

The Third Circuit in *Edynak*, however, assuming that *Executive Jet* could "be read

---

* Of course, to bring the case within the admiralty and maritime jurisdiction of the Federal Court, the collision must have occurred on a navigable waterway. Traditionally, waters "within the ebb and flow of the tide" have been considered navigable waterways for the purposes of admiralty jurisdiction. In tidal waters no showing of actual or potential navigability is required. *Leslie Salt Co. v. Froehlke*, 578 F.2d 742, 749 (9th Cir. 1978); *United States v. Stoe-*

co *Homes*, 498 F.2d 597, 610 (3d Cir. 1974), *cert. denied*, 420 U.S. 927, 95 S.Ct. 1124, 43 L.Ed.2d 397 (1975). It is common knowledge in Delaware that Rehoboth Bay is subject to the ebb and flow of the tide; the Court takes judicial notice of that fact. Fed.R.Evid. 201(b)(1). Rehoboth Bay is therefore a navigable waterway for purposes of the admiralty jurisdiction.

to transcend aviation tort claims, and to establish a general admiralty tort rule that a connection to traditional maritime activity as well as maritime locality is necessary to invoke federal maritime law," employed a four-part test to determine whether the requisite maritime connection existed in that case. The Court considered the functions and roles of the parties; the types of vehicles and instrumentalities involved; the causation and the type of injury; and the traditional concepts of the role of admiralty law. 562 F.2d at 220–21.

Redfearn argues that this discussion in *Edynak* signals an adoption by the Third Circuit of the "locality plus" test for admiralty jurisdiction. The Court does not read *Edynak* in that way. Nonetheless, it will assume arguendo that the "locality plus" test would apply, and in this light will consider Redfearn's contention that wrongs arising from pleasure boating do not bear the requisite relationship to traditional maritime activity or commerce.

In the main, the courts that have considered the question after *Executive Jet* have found pleasure boating accidents to be within the admiralty jurisdiction. Some have done so using the same four-part test used by the Third Circuit in *Edynak*. *Kelly v. Smith*, 485 F.2d 520, 525–26 (5th Cir. 1973), *cert. denied*, 416 U.S. 969, 94 S.Ct. 1991, 40 L.Ed.2d 558 (1974); *Gilmore v. Witschorek*, 411 F.Supp. 491, 493 (E.D.Ill. 1976); *Kayfetz v. Walker*, 404 F.Supp. 75, 76–77 (D.Conn.1975) (Lumbard, Cir. J.). Other courts have used more general reasoning to find relationships to traditional maritime activity. *Richards v. Blake Builders Supply, Inc.*, 528 F.2d 745, 749 (4th Cir. 1975) (pleasure boats were vessels in navigation, and controversy arose out of their navigation); *St. Hilaire Moye v. Henderson*, 496 F.2d 973, 976–79 (8th Cir.), *cert. denied*, 419 U.S. 884, 95 S.Ct. 151, 42 L.Ed.2d 125 (1974) ("operation of a boat on navigable waters, no matter what its size or activity, is a traditional maritime activity"); *Armour v. Gradler*, 448 F.Supp. 741, 744 (W.D. Pa.1978).

These cases demonstrate that the facts of the instant case bring it within the admiralty jurisdiction, particularly if it is tested by *Edynak's* four criteria. First, the parties involved are the pilots of two vessels and a passenger on one of them. Second, the collision involved only watergoing vessels, not aircraft, automobiles, or appurtenances to the land. Third, the injury allegedly resulted from violation of the rules of navigation, and from the motorboat's unseaworthiness. Fourth, admiralty has traditionally concerned itself with collisions between vessels and with providing remedies for those injured in such collisions. Therefore, if *Executive Jet* does indeed require a "significant relationship to traditional maritime activity" in all cases that are sought to be brought within the admiralty jurisdiction, such a relationship is present in this case.

Redfearn relies heavily on the recent case *Richardson v. Foremost Ins. Co.*, 470 F.Supp. 699 (M.D.La.1979), appeal docketed, C.A.No. 79–2542 (5th Cir. June 29, 1979), in which the District Court for the Middle District of Louisiana refused to exercise admiralty jurisdiction in a case involving the collision of two pleasure craft. However, *Richardson*, acknowledged by Redfearn to be the authority that best supports his argument, seems at odds with Fifth Circuit precedent. *Compare Richardson*, 470 F.Supp. at 700–03, *with Kelly v. Smith*, 485 F.2d at 525–26.

■ Finally, Redfearn suggests that the Court should decline jurisdiction of this case as a matter of policy. Pleasure boating, he argues, need not be governed by a uniform body of federal law; the federal interest is no stronger than that in automobile collisions. Pleasure boating is better regulated by local law attuned to local needs. Courts that have considered this policy argument, though, have generally rejected it. *Kelly v. United States*, 531 F.2d 1144, 1147 (2d Cir. 1976). Indeed, at least one court expressed some sympathy for the argument, but rejected it as contrary to settled law. *Richards v. Blake Builders Supply, Inc.*, 528 F.2d 745, 748–49 (4th Cir. 1975). This Court

similarly declines to buck the tide of precedent.

Indeed, Redfearn's policy argument may run aground on the shoals of congressional intent. In 1936, Congress amended the law relating to limitation of vessel owners' liability. The amendment augmented, in the case of any seagoing vessel, the amount of the fund available to pay personal injury claims. Congress, however, specifically exempted "pleasure yachts" from this augmented liability. Act of June 5, 1936, c. 521, § 1, 49 Stat. 1479 (amending Rev.Stat. § 4283, 46 U.S.C. § 183). In the case of pleasure yachts, the rule applicable to "vessels" generally would still apply: an owner's liability could be limited to the amount of the owner's interest in the vessel. *See* 46 U.S.C. § 183(a) (1976); S.Rep.No. 2061, 74th Cong., 2d Sess., at 5 (1936); Black, Law as an Art, Yale L.Rep., Winter 1979–80, at 17. Limitation of liability is peculiar to, and is coextensive with, maritime law. *See Butler v. Boston Steamship Co.*, 130 U.S. 527, 555, 9 S.Ct. 612, 618, 32 L.Ed. 1017 (1889). Therefore, in expressly recognizing that limitation of liability was available to pleasure boat owners, Congress also recognized that pleasure boating was within maritime law and the admiralty jurisdiction.

Because the facts of this case satisfy both the traditional "locality" rule and also the "locality plus" test set out as an alternative basis of decision in *Edynak*, 562 F.2d at 221, this Court has admiralty jurisdiction over the action. Redfearn's motion to dismiss therefore will be denied.