Frederick and Lynn MARRONI et al.

v.

Gary S. MATEY and Raymond Matey.

Raymond MATEY

v.

Frederick and Lynn MARRONI et al.

Civ. A. Nos. 78–3065, 78–4327.

United States District Court,
E. D. Pennsylvania.

June 18, 1980.

Andrew Elash, Philadelphia, Pa., for plaintiff Marroni.

Bernard V. O'Hare, Bethlehem, Pa., for plaintiff Matey.

William G. Ross, Bethlehem, Pa., for defendant Matey.

## FINDINGS OF FACT, DISCUSSION, CONCLUSIONS OF LAW, AND ORDER

HUYETT, District Judge.

### I. *Introduction*

On June 25, 1978, Gary Matey allegedly was operating a speedboat owned by his father, Raymond Matey, in the Delaware River approximately one mile upriver from Keifer Island, which is approximately nine miles north of Easton. The boat allegedly struck Michele Marroni as she swam near her anchored rowboat. The Marronis commenced an action in this court based upon admiralty jurisdiction since there is no diversity of citizenship between the parties. Defendant Raymond Matey thereafter commenced a proceeding pursuant to 46 U.S.C. § 183 to limit his liability to the value of the boat, which is purported to be $1,100.00. The question of the propriety of exercising admiralty jurisdiction in these actions has

been raised,[1] and the parties have submitted that issue upon depositions.

## II. *Findings of Fact*

1. The accident giving rise to these actions took place in the Delaware River at a place adjacent to Hutchinson, New Jersey, approximately one mile upriver from Keifer Island. (Hannold deposition at 8 and Exhibit 1 to Hannold deposition, section H) (the Hannold deposition is hereafter cited as "H.D.").

2. The accident occurred in a pool of the river that is approximately three-quarters of a mile long and approximately 400 feet wide. (H.D. at 8).

3. The pool is used for pleasure boating. (H.D. at 9).

4. The pool is bounded by riffles that prevent regular powerboats from proceeding upstream or downstream. (H.D. at 9–10).

5. The section of the Delaware River where the accident occurred has never been used for commercial purposes. (H.D. at 15).

6. Small Coast Guard boats occasionally patrol this area of the river. (H.D. at 13).

7. The Matey boat involved in this accident is a seventeen foot outboard motorboat powered by a fifty-five horsepower motor. (Raymond Matey deposition at 11) (hereinafter "M.D.").

8. At the time of the accident the Matey boat was operated by Gary Matey, son of the owner, Raymond Matey. The boat was being operated to test it following repairs. (M.D. at 16–17).

9. The boat was being tested so that Raymond Matey's employees could use the boat for recreation following a business meeting. (M.D. at 16).

10. At the time of the accident the boat was not being used to transport any cargo or for any commercial purpose.

11. The record contains no evidence that suggests that the boat was ever used for transporting cargo or for any commercial purpose.

12. At the time of the accident Michele Marroni was swimming in the Delaware River for recreation. (Michele Marroni deposition at 70–71).

13. At the place of the accident the Delaware River is not navigable for commercial purposes.

14. The Delaware River at the place of the accident is not reasonably susceptible of use for commercial navigation.

15. The alleged tort in these actions bears no significant relationship to any traditional maritime activity.

## III. *Discussion*

Federal courts are courts of limited jurisdiction. The parties may not waive the lack of subject matter jurisdiction. Even if a party does not contest jurisdiction, a federal court "is obliged to notice on its own motion the want of its own jurisdiction." 13 Wright, Miller & Cooper, *Federal Practice and Procedure* § 3522, at 48 (1975). When jurisdiction is questioned, the burden is on the party asserting jurisdiction to establish that jurisdiction in fact exists. Based upon the facts of these cases, we hold that no party asserting admiralty jurisdiction has sustained its burden of establishing that admiralty jurisdiction may properly be exercised; these actions shall therefore be dismissed.

"A cause of action sounding in tort is not cognizable under admiralty jurisdiction unless the alleged wrong occurs on

---

1. Two attorneys have entered an appearance for defendant Raymond Matey. One of the two filed a motion to dismiss for lack of admiralty jurisdiction. Mr. Matey and his other counsel, however, have disavowed the motion to dismiss and urge upon us the view that admiralty jurisdiction is proper in these actions. Litigation is not facilitated when a party speaks with conflicting voices; however, no party has raised the propriety of this type of representation, and the issue is not currently before us. Regardless of the status of the motion to dismiss, these events have served to alert us to the possibility that admiralty jurisdiction may not exist. We therefore feel constrained to determine this issue notwithstanding the positions of the parties.

navigable waters and bears a significant relationship to traditional maritime activity." *Adams v. Montana Power Co.*, 528 F.2d 437, 439 (9th Cir. 1975). The Third Circuit has held that, in tidal waters, the test of admiralty jurisdiction is the ebb and flow of the tide. *United States v. Stoeco Homes, Inc.*, 498 F.2d 597, 610 (3d Cir. 1974), *cert. denied*, 420 U.S. 927, 95 S.Ct. 1124, 43 L.Ed.2d 397 (1975). No party has suggested that the section of the Delaware River where this accident occurred is affected by the tides. Nor, we believe, could such a suggestion reasonably be made: this accident occurred well upstream of Trenton, New Jersey, which the Supreme Court noted over a hundred years ago was the head of tide water. *Rundle v. The Delaware and Raritan Canal Co.*, 55 U.S. (14 How.) 79, 87, 14 L.Ed. 335 (1852). Therefore, the test is one of "actual or reasonably potential navigability." *United States v. Stoeco Homes, Inc., supra*, 498 F.2d at 610. *See The Daniel Ball*, 77 U.S. (10 Wall.) 557, 19 L.Ed. 999 (1870).[2] Navigability in fact turns upon whether the river is "used or susceptible of use in [its] ordinary condition as [a highway] of commerce, of trade and travel in the modes customary on water." 1 *Benedict on Admiralty* § 143, at 9–33 (7th ed., 1974). The record produced in these actions suggests, and we so find, that the section of the Delaware on which this accident occurred is not used for commerce or trade, nor is it susceptible for such use. The fact that the accident did not occur on navigable waters is a crucial factor in our determination whether we may properly exercise admiralty jurisdiction.

In addition, we note that this accident involved a pleasure boat striking a girl who was swimming for recreational purposes in the Delaware. Some courts have suggested that pleasure boating does not fall within the ambit of admiralty jurisdiction, even if the waters are navigable. *See, e. g., Rich-*ardson v. Foremost Insurance Co.*, 470 F.Supp. 699 (M.D.La.1979). Other courts have more narrowly circumscribed their rulings, holding that admiralty jurisdiction is not properly invoked in the case of pleasure craft in waters that are not navigable. *See, e. g., Chapman v. United States*, 575 F.2d 147 (7th Cir.) (en banc), *cert. denied*, 439 U.S. 893, 99 S.Ct. 251, 58 L.Ed.2d 239 (1978); *Adams v. Montana Power Co., supra; In re Builders Supply Co.*, 278 F.Supp. 254 (N.D.Iowa 1968); *In re Madsen's Petition*, 187 F.Supp. 411 (N.D.N.Y.1960). We find the logic of those cases quite persuasive and, in view of our finding that this accident occurred in non-navigable waters, we believe that they directly support our conclusion that we lack jurisdiction in this case.

Even if this accident had occurred on navigable waters, we harbor strong reservations whether admiralty jurisdiction could properly be asserted. Following the Supreme Court's decision in *Executive Jet Aviation, Inc. v. Cleveland*, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972), various courts held that accidents involving water-skiers did not fall within admiralty jurisdiction, even if the accidents occurred on navigable waters. *See, e. g., Crosson v. Vance*, 484 F.2d 840 (4th Cir. 1973); *Jorsch v. LeBeau*, 449 F.Supp. 485 (N.D.Ill.1978). We are unable to perceive any principled distinction between an accident involving a water-skier struck by a pleasure craft and a swimmer so injured. Some courts, however, have held that *Executive Jet Aviation* did not diminish admiralty jurisdiction involving pleasure craft in general. *See, e. g., Kelly v. United States*, 531 F.2d 1144 (2d Cir. 1976); *Richards v. Blake Builders Supply Inc.*, 528 F.2d 745 (4th Cir. 1975) (expressing displeasure with the result); *St. Hilaire Moye v. Henderson*, 496 F.2d 973 (8th Cir.), *cert. denied*, 419 U.S. 884, 95 S.Ct. 151, 42 L.Ed.2d 125 (1974). In all of those

---

**2.** Navigability for purposes of Congress's exercise of the commerce power and navigability for purposes of determining the scope of admiralty jurisdiction are not necessarily coextensive. *Chapman v. United States*, 575 F.2d 147 (7th Cir.) (en banc), *cert. denied*, 439 U.S. 893, 99 S.Ct. 251, 58 L.Ed.2d 239 (1978); *Adams v. Montana Power Co.*, 528 F.2d 437 (9th Cir. 1975). We are concerned solely with navigability for purposes of the exercise of admiralty jurisdiction over these private parties.

cases, however, the water involved was navigable; we therefore find them distinguishable from the instant actions. Moreover, even if this accident had occurred on navigable waters, it may well be that our exercise of jurisdiction would exceed the original purposes of admiralty jurisdiction. *See* Stolz, "Pleasure Boating and Admiralty: *Erie* at Sea," 51 *Calif.L.Rev.* 661 (1963). Although the Supreme Court has entertained admiralty suits involving pleasure boats, *see Chapman v. United States, supra,* 575 F.2d at 150 n.10 (collecting cases), the question of jurisdiction was not specifically raised in those cases. Because this accident did not occur on navigable waters, however, we need not reach the more difficult question that would be presented if it had.

■ We are not without our own difficult questions, however. Raymond Matey, who seeks to limit his liability pursuant to 46 U.S.C. § 183, contends that regardless of the propriety of exercising admiralty jurisdiction over the suit against him and his son, his limitation action properly falls within admiralty jurisdiction. While his position is not without support, *see, e. g.,* 1 *Benedict on Admiralty* § 248 (7th ed., 1974), we do not agree. Although 46 U.S.C. § 188 states that "[e]xcept as otherwise specifically provided therein, the provisions of . . [46 U.S.C. § 183, providing for the limitation of liability] . . . shall apply to all seagoing vessels, and also to all vessels used on lakes or rivers or in inland navigation, including canal boats, barges, and lighters," several courts have held that § 183 is not applicable if the incident giving rise to the claim against the owner did not occur on navigable waters. *See In re Builders Supply Co.,* 278 F.Supp. 254 (N.D.Iowa 1968); *In re Madsen's Petition,* 187 F.Supp. 411 (N.D.N.Y.1960). Those cases are consistent with the view expressed by Professors Gilmore and Black: "Thus, provided that the structure seeking the benefit of the Limitation Act qualifies as a 'vessel' *and the event giving rise to the claims occurred on navigable waters within the Admiralty jurisdiction,* the Act applies." G. Gilmore & C. Black, Jr., *The Law of Admiralty* (2d ed., 1975) 843–44 (footnotes omitted; emphasis

supplied). Particularly in the case of pleasure boats, we believe that the Limitation Act is properly limited to incidents occurring on navigable waters. First of all, application of the Limitation Act to pleasure boats in any instance has been criticized for reasons we find highly persuasive. *See* Stolz, "Pleasure Boating and Admiralty: *Erie* at Sea," 51 *Calif.L.Rev.* 661 (1963). At least one commentator has found application of the Act in these instances to be "shocking and unjust." Harolds, "Limitation of Liability and its Application to Pleasure Boats," 37 *Temple L.Q.* 423, 444 (1964). Furthermore, some courts which have held that the Limitation Act is applicable (even if limitation is not ultimately granted) have done so with extreme reluctance. *See, e. g., Armour v. Gradler,* 448 F.Supp. 741, 748–49 (W.D.Pa.1978). This reluctance stems, no doubt, at least in part from the fact that application of the Limitation Act to pleasure craft seems far removed from the purposes of the Act. Courts "have emphasized that the purposes of this legislation were 'to promote the building of ships, and to encourage persons engaged in the business of navigation,' 'to encourage investments in ships and their employment in commerce,' 'to give our shipowners a chance to compete wtih (sic) those of Europe,' and to put 'American shipping upon an equality with that of other maritime nations.'" 3 *Benedict on Admiralty* § 7, at 1–44 and 1–45 (7th ed., 1979) (footnotes omitted). We find that none of those purposes are furthered by applying the Limitation Act to a boatowner whose boat is used solely for pleasure when it is involved in an accident with a recreational swimmer on non-navigable waters. On the facts of this case, we find the Limitation Act to be inapplicable.

IV. *Conclusions of Law*

1. At the place of the accident, the Delaware River is not navigable for purposes of the admiralty jurisdiction of the federal courts.

2. Michele Marroni was a recreational swimmer at the time she was allegedly struck by the Matey's boat.

3. The alleged tort in these actions bears no significant relationship to any traditional maritime activity.

4. The owner of a pleasure boat used solely for recreational purposes may not avail himself of the Limitation of Liability Act when his boat is involved in an accident with a swimmer in non-navigable waters.

5. The parties desiring the exercise of admiralty jurisdiction have not sustained their burden of showing that the exercise of such jurisdiction would be proper in these actions.

### ORDER

NOW, June 18, 1980, based upon the accompanying finding of fact and conclusions of law, and for the reasons stated in the accompanying discussion, IT IS ORDERED that these actions are DISMISSED for lack of admiralty jurisdiction.

Telephone notice of the contents of this order shall be given to counsel forthwith.